LITTLER MENDELSON, P.C.
  Andrew P. Marks (AM-0361)
  Sara D. Sheinkin (SS-9719)
885 Third Avenue, 16th Floor
New York, New York  10022.4834
Tel:  212.583.9600
Fax:  212.832.2719
  Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CELESTE WILLIAMS, et al., on behalf of themselves and others similarly situated,<br><br>               Plaintiffs,<br><br>  -against-<br><br>TWENTY ONES, INC., SHAWN CARTER, JUAN PEREZ and DESIREE GONZALES,<br><br>               Defendants. | Case No. 07 CV 103978 (LAP)<br><br><br><br>**FILED ELECTRONICALLY** |

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**
_____

**TABLE OF CONTENTS**

**PAGE**

I. PRELIMINARY STATEMENT ..................................................................................... 1

II. FACTS ............................................................................................................................. 1

III. STANDARD OF REVIEW .............................................................................................. 3

IV. ARGUMENT .................................................................................................................... 4

    A. Plaintiffs' Claims Against Shawn Carter and Juan Perez Should be Dismissed ............................................................................................................. 4

    B. Plaintiffs' State Law Class Action Claims Should Be Dismissed ....................... 6

        1. The Court does not have supplemental jurisdiction over plaintiffs' fifth through eighth claims for relief ......................................................... 6

        2. The Court should decline to exercise supplemental jurisdiction ............... 8

            a. Plaintiffs' state law claims are novel and complex ....................... 9

            b. Plaintiffs' state law claims will substantially predominate ......... 10

            c. There are other compelling reasons for declining jurisdiction ................................................................................. 12

V. CONCLUSION ............................................................................................................... 16

**I.     PRELIMINARY STATEMENT**

Pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure and 28 § 1367, defendants Twenty Ones Inc., d/b/a/ the 40/40 Club, Shawn Carter, p/k/a Jay-Z, Juan Perez and Desiree Gonzales-Perez (collectively "defendants") submit this Memorandum of Law in Support of their Motion to Dismiss.

Plaintiffs' claims against individual defendants Shawn Carter and Juan Perez should be dismissed because they are merely shareholders of Twenty Ones Inc., d/b/a The 40/40 Club; not "employers" subject to liability within the meaning of the Fair Labor Standards Act or New York Labor Law.

Plaintiffs' state law class action claims should also be dismissed, in whole or in part. The Court lacks jurisdiction over several of these claims because they do not arise from a common nucleus of operative facts as the federal claims. As to others, the Court should decline to exercise supplemental jurisdiction because: (1) they involve novel and complex issues of state law; (2) they will predominate over the federal claims; and (3) other compelling reasons exist for the Court to decline jurisdiction.[1]

**II.    FACTS**

Plaintiffs complain under several state and federal theories that they were not paid all the wages due to them for their work at The 40/40 Club. In addition to suing The 40/40 Club, however, plaintiffs purport to bring claims directly against the shareholders of the corporation that owns The 40/40 Club, specifically Shawn Carter and Juan Perez. Except for conclusory allegations that Messrs. Carter and Perez "exercise[] sufficient control of the club to be

---

[1] It is unclear from the complaint whether plaintiffs have waived liquidated damages under state law. If not, plaintiffs' state law class action claims must be dismissed also because New York law prohibits class actions that seek liquidated damages, unless expressly provided for by statute. N.Y. Civ. Prac. Law & R. § 901(b).

considered plaintiffs' employer" (Am. Compl. ¶ 5-6), the amended complaint contains not a single factual allegation that either individual exercised any influence in the personnel decisions of The 40/40 Club that are at issue. The caption of the complaint, however, identifies Shawn Carter as "p/k/a Jay-Z," a Grammy award winning rapper and businessman who is of obvious interest to the media and the public.

In their eight count complaint, plaintiffs assert two federal law claims against defendants. In their first claim for relief, plaintiffs allege that defendants failed to pay them minimum wage and failed to keep accurate records as required by the FLSA. (Am. Cmpl. ¶ 45, 47.) In their second claim for relief, plaintiffs allege that defendants failed to pay them overtime at the appropriate rate. (Am. Cmpl. ¶ 52.) Plaintiffs seek to pursue these federal claims as an opt-in collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt persons employed by defendants in any hourly position during the three year period prior to the filing of the Complaint. (Am. Cmpl. ¶ 18.)

Plaintiffs then assert six state law claims against defendants. Mirroring the federal claims, plaintiffs allege that defendants: (1) failed to pay plaintiffs minimum wage for all hours worked and failed to furnish plaintiffs with adequate records of their wages, as required by N.Y. Labor Law § 195; and (2) failed to pay plaintiffs overtime at the appropriate rate. (Am. Compl. ¶ 55-56, 60.) Plaintiffs' four other state law claims, however are unrelated to the federal causes of action. Specifically, plaintiffs claim that defendants: (1) failed to compensate plaintiffs one hour's pay at the minimum wage rate when plaintiffs worked more than ten hours in a workday, as required by the New York "spread of hours" rule; (2) wrongfully retained portions of the plaintiffs' gratuities; (3) made improper deductions from plaintiffs' pay; and (4) failed to timely pay plaintiffs' wages, as required by New York Lab. Law § 191. (Am. Cmpl. ¶ 64, 67, 70, 74.)

Plaintiffs seek to pursue these six state law claims as opt-out Rule 23 class actions on behalf of all non-exempt persons employed by defendants in any hourly position during the six-year period prior to the filing of the complaint. (Am. Cmpl. ¶ 21.)

### III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes this Court to dismiss any aspect of the Amended Complaint on the ground that some or all of it fails to state a claim upon which the Court can grant relief. When deciding whether to dismiss an action pursuant to Rule 12(b)(6), a federal court must accept the factual allegations as true. Desiano v. Warner-Lambert & Co., 467 F.3d 85, 89 (2d Cir. 2006) (petition for cert. filed 5/10/07). If, after doing so, the court determines that the plaintiff cannot proceed on the claim(s) as alleged, it may dismiss the claim, or any portion of it, including invalid Rule 23 allegations. Otto v. Pocono Health Sys., 457 F. Supp. 2d 522 (M.D. Pa. 2006).

In accordance with Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court should dismiss any claim over which it does not have subject matter jurisdiction. Whether the Court has supplemental jurisdiction over plaintiffs' state law claims is governed by 28 § 1367. The Court may not exercise supplemental jurisdiction over state law claims that do not form part of the same case or controversy as the claims over which the Court has original jurisdiction. Id. Even where the Court may exercise supplemental jurisdiction, it can, in its discretion, decline to do so where the state law claims raise a novel or complex issue of state law, substantially predominate over the federal claims, or where other compelling reasons exist to decline jurisdiction.

Pursuant to the foregoing standards, defendants seek the dismissal of plaintiffs' claims against Shawn Carter and Juan Perez in their entirety and all of plaintiffs' state law class action claims.

3

IV.   **ARGUMENT**

   A.   **Plaintiffs' Claims Against Shawn Carter and Juan Perez Should be Dismissed**

Only an "employer" can be held liable for violations of the FLSA and New York Labor Law. The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to the employee." 29 U.S.C. § 203(d). The New York Labor Law defines the term as "any person . . . employing any individual in any occupation . . . ." N.Y. CLS Labor § 190. While these definitions are somewhat circular, at a minimum a person or entity alleged to be an employer must control the workers in question. Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132 (2d Cir. 1999). Control of a corporation through stock ownership alone is insufficient. Bravo v. Eastpoint Int'l Inc., No. 99 Civ. 9474, 2001 U.S. Dist. LEXIS 3647 (S.D.N.Y. Mar. 30, 2001).

In determining whether an individual is a statutory employer, "the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye toward the 'economic reality' presented by the facts of each case." Herman, 172 F.3d at 139. Under the "economic reality" test, courts consider whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. Id.

Where, as here, a shareholder does not exercise day-to-day operational control over the relevant employees, he is not an "employer" under the FLSA or New York law. See, e.g., Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007) (dismissing claims against shareholder because "his investment did not carry with it managerial responsibility"); Jankowski v. Castaldi, No. 01-cv-0164, 2006 U.S. Dist. LEXIS

4

4237 (E.D.N.Y. Jan. 13, 2006) (dismissing individual defendant who did not participate in the operation of the business). Even where a corporation is inextricably identified with a public figure, that public figure is not necessarily liable for the alleged wage violations of the company. Thus, in Bravo, supra, the court dismissed plaintiffs' wage and hour claims against Donna Karan individually, holding that the fact that she was the owner and chairperson of Donna Karan alone was insufficient to hold her liable as an "employer" where plaintiffs had alleged no facts to establish her power to control the employees in question.

Here, as in Chan, Bravo, and Jankowski, plaintiffs' claims against Shawn Carter and Juan Perez should be dismissed. Although the amended complaint alleges that these shareholders have the requisite operational control over The 40/40 Club to be held liable as "employers," there is not a single *factual* allegation concerning any responsibilities held by Shawn Carter or Juan Perez. The Court must accept as true the factual allegations in the complaint; but "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006); Bravo, 2001 U.S. Dist. LEXIS 3647, at *5.

The complete absence of factual substantiation is not surprising because neither Mr. Carter nor Mr. Perez exercise control over personnel decisions. As detailed in the accompanying affidavit of Desiree Gonzalez-Perez, the General Manager of The 40/40 Club, Messrs. Carter and Perez do not set the terms and conditions of employment for employees; do not interview employees; do not hire employees; do not set policies for the payment of wages, pay rates or the method of payment; and do not sign the employees' paychecks. Indeed, they have no roll in payroll whatsoever. Nor are they involved in the setting of hours or scheduling of employees. They do not supervise or discipline employees, investigate complaints, or set employment

5

policies or procedures. They do not participate in staff meetings and do not maintain employment records or direct what records should be maintained. Neither has an office in the Club. Put simply, they do not control the workers in question.[2]

It may be that plaintiffs named these individuals as defendants solely because Shawn Carter is a public figure, and plaintiffs hoped to draw publicity to extract a quick settlement. Shawn Carter's persona, however, is not a basis for subject matter jurisdiction and he and his partner, Juan Perez, can not be dragged into this lawsuit where neither is a statutory employer. Because plaintiffs' complaint consists of no more than factually unsupported legal conclusions concerning Shawn Carter and Juan Perez's status, plaintiffs' claims against both individuals must be dismissed as a matter of law.

### B. Plaintiffs' State Law Class Action Claims Should Be Dismissed

#### 1. The Court does not have supplemental jurisdiction over plaintiffs' fifth through eighth claims for relief

A court is empowered to exercise supplemental jurisdiction over state law claims that derive from a "common nucleus of operative fact" with claims over which the court has original jurisdiction. Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006). In order to determine whether two disputes arise from a common nucleus of operative fact, courts traditionally consider whether the facts underlying the federal and state law claims substantially

---

[2] The motion to dismiss the individual defendants is akin to a motion for lack of subject matter jurisdiction. This Court would have subject matter jurisdiction over the individuals only if they are employers within the meaning of the FLSA. On a motion to dismiss for lack of subject matter jurisdiction, a court may "resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits . . . ." Zapia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000). However, if the Court deems the submission of an affidavit in support of this motion to dismiss improper, we ask that this motion be converted to a motion for summary judgment. See Estate of Lenno v. Screen Creations, 939 F. Supp. 287, 292 (S.D.N.Y. 1996) (Under Rule 12(b), "the Court may either exclude the additional submissions and decide the motion on the pleadings only or convert the motion to one for summary judgment.").

overlap.  Id.  Here, plaintiffs' federal claims and the claims asserted in plaintiffs' fifth through eighth claims for relief do not derive from a common nucleus of operative fact.  Thus, this Court does not have supplemental jurisdiction over these state law claims.

Plaintiffs' FLSA claims seek minimum wage for all hours worked and overtime due for work performed in excess of forty hours per week.  The facts underlying these claims are the number of hours that each plaintiff worked in a given week, and the amount paid to each plaintiff for that week.  Other than the mirroring minimum wage and overtime claims, plaintiffs' state law claims diverge factually from plaintiffs' FLSA claims.

Plaintiffs' fifth claim asserts that plaintiffs regularly worked more than ten hours per day, and that defendants willfully failed to compensate plaintiffs an additional one hour's pay at the minimum wage, as required by New York Labor Law.  Adjudication of this claim would require a detailed review of all working hours and payments made to plaintiffs on a daily basis. Plaintiffs' sixth and seventh claims seek damages for alleged deductions from pay and gratuities. These claims concern whether defendant willfully retained any portion of the tips earned by plaintiffs or made any other unlawful deductions from plaintiffs' pay.  Adjudication of these claims will require a transaction by transaction and pay period by pay period analysis of each disputed deduction.  It will also require review of information concerning the amount of tips earned by plaintiffs and the amounts allegedly retained by defendants -- issues that are entirely irrelevant to plaintiffs' federal minimum wage and overtime claims.  Plaintiffs' eighth claim is similarly distinct from plaintiffs' federal claims.  In this claim, plaintiffs allege that defendants violated the New York Labor Law by failing to pay plaintiffs "not less frequently than semi-monthly."  Essentially, this claim concerns whether defendants paid plaintiffs their wages in a

7

timely manner. Contrary to their federal claim, this state claim does not concern the number of hours worked by, or the amount of money paid to, plaintiffs.

The only link between these state law claims and plaintiffs' federal claims is the general employer-employee relationship between plaintiffs and The 40/40 Club. This is insufficient to confer supplemental jurisdiction. See Hyman v. WM Fin. Servs., Inc., No. 06-CV-4038, 2007 U.S. Dist. LEXIS 41433, at *13 (D.N.J. June 7, 2007). In Hyman, the court found that it lacked the authority to exercise supplemental jurisdiction over plaintiffs' state law claims for impermissible deductions and failure to pay wages on a timely basis under analogous circumstances to the case here. The court would not permit plaintiffs to string together unrelated state law claims to an FLSA overtime action, where the state law claims involved factual determinations that overlapped little with their FLSA claim. Id. at *15.

Similarly, here, plaintiffs' FLSA and state law claims for spread of hours, illegal deductions and untimely payment of wages do not form part of the same case or controversy as required for this Court to exercise supplemental jurisdiction. These state law claims will necessarily require different methods of proof regarding the number of hours worked and wages paid to each plaintiff on a daily, rather than weekly, basis, whether and to what extent any deductions were made from plaintiffs' wages or amounts retained from plaintiffs' tips, and the timing of wage payments. Therefore, the Court lacks subject matter jurisdiction over plaintiffs' fifth through eighth claims for relief and these claims should, accordingly, be dismissed.

### 2. The Court should decline to exercise supplemental jurisdiction

Even where a court has the authority to exercise supplemental jurisdiction over a state law claim, it may decline to do so where: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district

court has original jurisdiction; or (4) there are other compelling reasons for declining jurisdiction.  28 U.S.C. §1367(c).

### a. Plaintiffs' state law claims are novel and complex

Several state law claims asserted by plaintiffs raise novel or complex issues of state law. Where novel and complex issues of state law do not appear to have been resolved by the state courts, the district court should decline to exercise supplemental jurisdiction.  Nevares v. Captain Louis Morrissey, No. 95 Civ. 1135, 1998 U.S. Dist. LEXIS 7680 (S.D.N.Y. May 22, 1998). This is especially true where the claims involve interpretation of a New York State statute, which is a task best left to the state courts.  Id. at *28; see also Cunninghuam v. Local 30, 234 F. Supp. 2d 383 (S.D.N.Y. 2002) (declining supplemental jurisdiction over state law claim that had not been explored in any depth by New York State courts).

There is a dearth of authority on plaintiffs' fifth claim, alleging a "spread of hours" violation.  This Court would, therefore, be left making determinations on this claim without the benefit of a body of state law guidance on its applicability or effect.

Claims such as plaintiffs' sixth claim for relief, arising out of New York Labor Law section § 196-d are most commonly heard by the New York State Industrial Board of Appeals. Accordingly, there is similarly no body of state court law upon which this Court could reasonably rely in deciding this claim.

Plaintiffs' eighth claim for relief, for timely payment of wages, may raise the most novel and complex issues.  Before determining whether plaintiffs have stated a valid claim for relief, the Court would have to decide whether individuals are entitled to pursue relief under this New York Labor Law, which sets forth specific civil and criminal penalties for violation.  N.Y. Lab. L. § 191.

The need to resolve these issues, which are better left to New York state courts, weighs in favor of this Court declining to exercise supplemental jurisdiction.  See e.g., De Asencio v. Tyson Foods, Inc, 342 F.3d 301, 311 (3rd Cir. 2003).

### b.    Plaintiffs' state law claims will substantially predominate

Where state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.  De Asencio, 342 F.3d at 312.  Here, plaintiffs' six New York state law claims introduce issues far broader than the FLSA overtime and minimum wage issues.  As discussed above, resolving the state law claims will require the Court to "engage in a journey of law and fact far afield from the issue[s] raised in their FLSA action."  Hyman v. WM Financial Servs., Inc., No. 06-CV-4038, 2007 U.S. Dist. LEXIS 41433, at *16 (D.N.J. June 7, 2007).  Apart from the weekly wage and hour records that will be necessary to consider in reviewing plaintiffs' federal claims, a review of plaintiffs' state law claims will require consideration of: (1) records that indicate plaintiffs' daily hours and wages, (2) documents that show the amount of gratuities earned by each plaintiff; (3) any records that might demonstrate defendants' retention of those gratuities, including sales records and receipts; (4) defendants' policies and procedures concerning gratuities; (5) transaction records; and (6) any other documents that may indicate deductions from plaintiffs' wages.  Moreover, while the validity of plaintiffs' federal claims can be determined by a review of defendants' records, it is likely that plaintiffs will attempt to prove their state law claims regarding gratuities and deductions chiefly through witness testimony.  For these reasons, plaintiffs' state claims clearly sweep far broader than plaintiffs' two federal claims.  See, e.g., De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309, 312 (declining to exercise supplemental jurisdiction where state

10

law issues predominated over FLSA claim); Hyman, 2007 U.S. Dist. LEXIS 41433, at *16 (same).

The number of individuals who participate in the federal collective action and the state class actions will also likely result in the state claims predominating over the federal claims. The classes are alleged to comprise over 100 individuals. (Am. Compl. ¶ 23.) Although some of these putative plaintiffs may participate in both actions, it is uncertain whether those who fail to opt-out of the Rule 23 state law class action (and are, thus, members of the class) will affirmatively act to opt-in to the FLSA collective action. Because a significant number of putative Rule 23 class action members may not opt-in to the FLSA collective action, the predominance of state law claims will be magnified. Moreover, while the statute of limitations for the federal action is only three years, the state law claims have a six year statute of limitations.

The Third Circuit has recognized that "the disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog." De Asencio, supra, 342 F.3d at 311. In De Asencio, like the case here, plaintiffs sought certification of a state-law wage and hour class action in conjunction with an opt-in class under the FLSA. The Circuit Court held that, given the disparity between the size of the federal and state classes, the district court had not exercised sound discretion in granting supplemental jurisdiction over plaintiffs' state-law action. Id. The potential disparity between the sizes of the federal and state classes in this matter similarly

11

weighs in favor of declining supplemental jurisdiction.[3]  Therefore, this Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

### c. There are other compelling reasons for declining jurisdiction

In addition to the reasons cited above, the inherent incompatibility between Rule 23 class actions and FLSA collective actions under Section 216(b) is a compelling reason for this Court to decline to exercise supplemental jurisdiction over plaintiffs' state law claims.  The FLSA specifically provides that "[n]o employee shall be a party plaintiff to [an action for wages] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  This "opt-in" requirement ensures that employees with wage claims knowingly take affirmative steps to become members of a class seeking redress of those claims in federal court.  But, in a Rule 23 class action, The 40/40 Club's employees would be bound without their express consent.  This inconsistent result provides a compelling reason for declining to exercise supplemental jurisdiction.

By way of background, in 1947, Congress enacted the Portal to Portal Act "in response to a 'national emergency' created by a flood of suits under the FLSA.  <u>Arrington v. Nat'l Broad Co.</u>, 531 F. Supp. 498, 500 (D.C. Cir. 1982).  One of the amendments added the "opt-in" requirement, which states that "no employee shall be a party to any action unless he gives his

---

[3] Moreover, the remedy sought by plaintiffs under state law is far greater and more difficult to calculate than their potential remedy under federal law.  Under federal law, plaintiffs seek only the amount of unpaid wages, which should be calculable based on a review of plaintiffs' time and earnings records.  Under state law, however, plaintiffs seek, among other things, the amount of tips they allege were wrongfully retained by defendants as well as any amounts that were wrongfully deducted from their wages.  These amounts will be far more difficult to calculate.  Where, as here, state claims substantially predominate in terms of the comprehensive of the remedy sought, the state claims may be dismissed without prejudice.  <u>Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966).

consent in writing to become such a party and such consent is filed with the court in which such action is brought." 29 U.S.C. § 216(b).

In sharp contrast to the "opt-in" procedures of the FLSA, the Rule 23 class actions operate under an "opt-out" scheme in which prospective class members are included within the action unless they expressly opt out. See Himmelman v. Cont'l Cas. Co., No. 06-166, 2006 U.S. Dist. LEXIS 56187 (D.N.J. Aug. 11, 2006).  In a Rule 23 class action, each person who is in the defined category is determined to be a class member and as such "is bound by judgment, whether favorable or unfavorable, unless he has 'opted out' of the suit." LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286 (5th Cir. 1975).  The amendments to the FLSA "prohibit what precisely is advanced under [FRCP] 23 – a representative plaintiff filing an action that potentially may generate liability in favor of uninvolved class members." Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1248 (11th Cir. 2003).  As the court in Otto v. Pocono Health System, 457 F. Supp. 2d 522 (M.D. Pa. 2006), explained, "to allow a Section 216(b) opt-in state class action to proceed accompanied by a Rule 23 opt-out state law class action claim would essentially nullify Congress' intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement." Id.; see also Schmidt v. Fuller Brush Co., 527 F.2d 532 (8th Cir. 1975) ("Rule 23 cannot be invoked to circumvent the consent requirement of . . . . FLSA Section 216(b)").

Deferring to the FLSA's specific statutory directive, courts regularly decline to certify Rule 23 class actions for supplemental state-law claims in the same proceeding as a FLSA collective action.  Although our research has uncovered no cases where the Second Circuit has

13

ruled on this issue,[4] courts in other circuits have found that an irreconcilable conflict exists. See e.g., Aquilino v. Home Depot U.S.A., Inc., No. 04-cv-4100, 2006 U.S. Dist. LEXIS 48554, at *11 (D.N.J. July 17, 2006) ("The Congressional intent for an opt-in procedure pursuant to FLSA . . . 'would largely be thwarted if a plaintiff were permitted to back door the shoe horning in of unnamed parties'"); see also, LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 289 (5th Cir. 1975) (finding that Section 216(b) and Rule 23 are "mutually exclusive and irreconcilable"); Prickett v. Dekalb County, 349 F.3d 1294, 1296 (11th Cir. 2003) ("Because of this opt-in requirement [under section 216(b)], plaintiffs may not certify a class under Rule 23"); Schmidt v. Fuller Brush Comp., 527 F.2d 532 (8th Cir. 1975) (noting the irreconcilability of Section 216(b) and Rule 23).

Recently, the court in Moeck v. Gray Supply Corp., No. 03-1950, 2006 U.S. Dist. LEXIS 511, at *15 (D.N.J. Jan. 5, 2006), refused to certify plaintiff's state law overtime claim under Rule 23. Recognizing that the FLSA's opt in procedure is meant to limit "private FLSA plaintiffs to employees who asserted claims in their own right," the court would not permit plaintiff to call upon a state statute to circumvent the FLSA opt-in requirement. Id. at *15-16. See also, e.g., King v. West Corp., No. 8:04CV318, 2006 U.S. Dist. LEXIS 3926, *35 (D. Neb. Jan. 13, 2006) (recognizing the "fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b)"); Rodriguez v. The Texan, Inc., No. 01 C1478, 2001 U.S. Dist. LEXIS 24652, at *3 (N.D. Ill. Mar. 7, 2001) ("That policy [of opting in under the FLSA] and the underlying congressional intent would be thwarted if a

---

[4] The Second Circuit's decision in Overnight Transp. Co. v. Tianti, 926 F.2d 220 (2d Cir. 1991) did not address whether there was an irreconcilable difference in maintaining a FLSA and state law class action. That issue was not before the court. The Second Circuit merely held that the FLSA does not pre-empt Connecticut overtime wage law.

14

plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement.").

Nor should plaintiffs here be permitted to circumvent the FLSA's opt-in requirement by calling upon New York Labor Law and Rule 23 to bind absent class members without their express consent. This would undermine the clear mandates of the FLSA. Accordingly, the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims.[5]

The likelihood that separate classes of plaintiffs will emerge and cause undue jury confusion constitutes another exceptional circumstance under which the Court should decline to exercise supplemental jurisdiction. In Zelaya v. J.M. Marcias, Inc., 999 F. Supp. 778, 783 (E.D.N.C. 1998), for instance, the court determined that "[t]he inclusion of a state law claim involving over 100 plaintiffs with a separate federal law claim involving a separate, distinct and smaller class . . . would undoubtedly confuse the jury." Here, plaintiffs assert six state law claims, which, they contend, involve over 100 plaintiffs. Plaintiffs also assert two federal claims. These claims are likely to involve separate and distinct classes. The federal law classes would consist of all members who failed to opt out, while the state law classes would consist

---

[5] Although some judges in the Southern District of New York have rejected this analysis and exercised supplemental jurisdiction over state law class action claims in an FLSA action, such decisions are not binding on this Court. Moreover, unlike here, cases exercising supplemental jurisdiction typically involve state minimum wage and overtime claims that mirror the alleged federal claims. See, e.g., Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 374 (S.D.N.Y. 2007) (plaintiffs' unpaid wages claims under state and federal law were "essentially the same and [arose] out of the same alleged conduct of the defendants."); Ouedraogo v. Durso Assoc., Inc., No. 03 CV 1851, 2005 U.S. 11954, at *5 (S.D.N.Y. 2005) (plaintiffs' state law unpaid wages claims shared a "basic common story" with their federal claims such that they would require overlapping testimony and documentation); Ansoumana v. Great Atlantic & Pacific Tea Corp., 201 F.R.D. 81, 95 (S.D.N.Y. 2001) (plaintiffs' state law claims were so similar to their federal claims that it was likely they would succeed or fail together); Brzychnalski v. Unesco, Inc., 35 F. Supp. 2d 351 (S.D.N.Y. 1999) (plaintiffs' overtime claims under state and federal law were "essentially the same"). Therefore, even if the Court does not dismiss plaintiffs' state minimum wage and overtime claims as conflicting with Section 216(b), the remaining state law claims still should be dismissed.

only of those members who affirmatively opted in. Additional classes may be necessary for the various state law claims as well. For instance, plaintiffs who did not work as tipped employees cannot participate in plaintiffs' claim for illegal deductions from gratuities, and plaintiffs who never worked more than ten hours in a day cannot participate in plaintiffs' spread of hours claim. Because the distinct possibility exists that the claims by these different classes would confuse a jury and detract from, not enhance, the expeditious and efficient resolution of this action, compelling reasons exist for the Court to decline exercising supplemental jurisdiction.[6]

## V.   CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss all claims against Shawn Carter and Juan Perez, and dismiss the state law claims against all defendants.

Dated: New York, New York
July 27, 2007

LITTLER MENDELSON, P.C.

By:   s/ Andrew P. Marks
      Andrew P. Marks (AM-0361)
      Sara D. Sheinkin (SS-9719)
      885 Third Avenue
      New York, New York 10022
      Tel:  (212) 583-9600
      Email: amarks@littler.com

      Attorneys for Defendants

---

[6] The confusion that this dual opt-in and opt-out class scheme would cause potential class members is yet another circumstance compelling the court to decline supplemental jurisdiction. Courts have recognized that "it would be difficult to fashion an effective notice to prospective class members that explains their opportunity to opt in to the FLSA collective action as well as their choice to opt out of the class action." Thiebes v. Wal-Mart Stores, Inc., No. 98-802, 2002 U.S. Dist. LEXIS 664, at *5 (D. Or. Jan. 9, 2002). In denying plaintiff's motion for class certification of his state-law claims where the court had already authorized notice of plaintiff's FLSA collective action, the court in McClain v. Leona's Pizzeria, Inc., 222 F.R.D. at 577, found that the "inherently contrasting nature of opt-in verses opt-out actions would create challenges were these actions to proceed simultaneously in federal court." For example, the court recognized that it would be "confusing for a potential class member to receive a notice indicating that they must opt out of some claims and opt in to others." Id.