**JOSEPH & HERZFELD LLP**
D. Maimon Kirschenbaum (DK-2448)
757 3rd Avenue
New York, NY 10017
Telephone:  (212) 688-5640

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (Pro Hac)
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone:  (713) 877-8788

**MICHAEL SHEN & ASSOCIATES, PC**
Michael Shen, Esquire
225 Broadway, Suite 2515
New York, NY 10007
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

| | |
|---|---|
| **CELESTE WILLIAMS, et al.,** | **INDEX NO. 07-CV-3978** |
| and | and |
| **KISHMA PICKERING, et al.** | **INDEX NO. 07-CV-4798** |
| Plaintiffs, | **FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION** |
| v. | |
| **TWENTY ONES, INC. d/b/a THE 40/40 CLUB, et al.,** | **JURY TRIAL DEMANDED** |
| | **JUDGE PRESKA** |
| Defendants. | |

-----------------------------------------------------------x

**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
AND BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................... 1

II. BACKGROUND ...................................................................................................... 2

   A. WHO'S WHO. ..................................................................................................... 2

   B. THE FLSA'S MINIMUM WAGE AND OVERTIME REQUIREMENTS. ....................... 2

   C. THE FLSA'S COLLECTIVE ACTION PROCESS. ..................................................... 4

      1. The Lenient Standard Applicable at the First Step. ........................................... 5

      2. The Second Step. ............................................................................................... 7

III. ARGUMENT. .......................................................................................................... 7

   A. DEFENDANTS' POLICIES AND PRACTICES VIOLATE THE FLSA. ........................... 7

      1. The Club does not pay its employees proper minimum wages ......................... 7

         a. The Club does not pay its employees any direct wage. .................................. 7

         b. The Club retains a portion of its employees' tips ........................................... 8

            (1) The Club charges its servers for "walk-outs" ............................................. 8

            (2) The Club charges its servers for breakages and spills ............................... 9

            (3) The Club withholds credit card tips in certain instances ........................... 9

      2. The Club Fails to Pay Overtime for All Hours Worked in Excess of 40 in a Workweek. ...................................................................................................... 10

   B. PLAINTIFFS MEET AND EXCEED THE MINIMAL STANDARD FOR CONDITIONAL CERTIFICATION. .............................................................................................. 12

V. CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Ayres v. 127 Restaurant Corp.*, 12 F.Supp.2d 305 (S.D.N.Y.1998) ................................... 8

*Barrus v. Dick's Sporting Goods, Inc.*, 465 F.Supp.2d 224 (W.D.N.Y. 2006) ................... 6

*Braunstein v. Eastern Photographic Labs, Inc* ., 600 F.2d 335 (2nd Cir. 1978) ................. 5

*Chan v. Sung Yue Tung Corp.*, 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007) ....................... 7

*Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749 (S.D.N.Y. 2006) ................................ 3, 7

*Chung v. New Silver Palace Rest., Inc.*, 246 F.Supp.2d 220 (S.D.N.Y.2002) ................ 3, 7

*Cuzco v. Orion Builders, Inc*. 477 F.Supp.2d 628 (S.D.N.Y. 2007) ................................... 5

*Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317 (S.D.N.Y. 2007) ................... 2, 5

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 101 (S.D.N.Y.2003) ....... 5, 7

*Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249 (S.D.N.Y.1997) ............................................. 5

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007) ..................... 6

*Lewis v. National Financial Sys., Inc.*, 2007 WL 2455130 (E.D.N.Y. Aug. 23, 2007) ...... 6

*Lynch v. United Services Auto. Ass'n*, 2007 WL 1288582 (S.D.N.Y. April 26, 2007) ...... 6

*Mascol v. E & L Transp., Inc.*, 387 F.Supp.2d 87 (E.D.N.Y. 2005) ............................. 4, 11

*Masson v. Ecolab, Inc.*, 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) .................... 4, 6, 12

*Mazur v. Olek Lejbzon & Co.*, 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005) ............... 4, 6

*McGuiggan v. CPC Int'l, Inc.*, 84 F.Supp.2d 470 (S.D.N.Y.2000) .................................... 2

*Reich v. Priba Corp.*, 890 F.Supp. 586 (N.D.Tex. 1995) ................................................... 9

*Richard v. Marriott Corp.*, 549 F.2d 303 (4th Cir. 1977) .................................................. 3

*Rogers v. City of Troy, NY*, 148 F.3d 52 (2nd Cir. 1998) .................................................. 4

*Scholtisek v. Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005) ............................................ 5

*U.S. v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2nd Cir.1960) ............................... 4

*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50 (S.D.N.Y. 2005) .................................. 6

**STATUTES**

29 U.S.C. § 203(m) ...................................................................................................... 6, 12

29 U.S.C. § 206(a)(1) ......................................................................................................... 6

29 U.S.C. § 207(a)(1) ...................................................................................................... 6, 7

29 U.S.C. § 216(b) ......................................................................................................... 7, 17

**REGULATIONS**

29 C.F.R. § 531.3(d)(2) ................................................................................................ 11
29 C.F.R. § 531.32(c) ................................................................................................... 11
29 C.F.R. § 531.35 ................................................................................................... 6, 11

**OTHER AUTHORITIES**

Dept. of Labor Fact Sheet #16 (Nov. 2007) ..................................................................... 7

I.  **INTRODUCTION**

This case is about whether the employees who are owed wages will be given a chance to recover them. Defendants failed to pay their non-exempt workers as required by the Fair Labor Standards Act (FLSA) and New York law.[1] In particular, Defendants maintained policies and practices which resulted in non-exempt workers receiving less than the minimum wage and/or less than time and a half for each hour worked in excess of forty in a workweek.

Because the workers should be given the chance to recover them, Plaintiffs ask the Court to:

(1)  Conditionally certify this suit as a collective action;[2]

(2)  Authorize Plaintiffs to send an approved Notice (Exhibit A) of this action along with a Consent form (opt-in form) (Exhibit B) to all hourly employees employed by Defendants within the last three years ("Covered Employees");

(3)  Order production of names, last known mailing addresses, alternate addresses, all telephone numbers, last known email addresses, and dates of employment of all Covered Employees.

(4)  Order Defendants to post the Notice, along with the Consent forms, in a place where putative plaintiffs are likely to view it.

---

[1]  *See Williams v. Twenty-Ones, Inc.*, Index No. 07 Civ. 3978 (*Williams*) at Doc. 35 (*Williams* Complaint) and *Pickering v. Twenty-Ones, Inc.*, Index No. 07 Civ. 4798 (*Pickering*) at Doc. 1 (*Pickering* Complaint).

[2]  The *Williams* and *Pickering* plaintiffs bring this motion for conditional certification jointly.

## II.     BACKGROUND

### A.     WHO'S WHO.

Defendant Twenty Ones, Inc. does business as The 40/40 Club (the "Club") in Manhattan.[3] The Club is an upscale sports bar and lounge located between 6th Avenue and Broadway.[4] Defendants Shawn Carter and Juan Perez own the Club[5] and wield significant power over its operation.[6] Desiree Gonzales is the Club's general manager.[7]

The Named Plaintiffs worked as office workers, waiters, bartenders, runners and/or bussers at the Club within the last three years. In addition to the Named Plaintiffs, more than a dozen other Club employees have joined this action by filing written consents in accordance with the FLSA's opt-in procedure.[8] These workers have not been paid the wages required by federal law. Further, as set forth below, numerous other employees have been subjected to policies and/or practices which violate the FLSA.

### B.     THE FLSA'S MINIMUM WAGE AND OVERTIME REQUIREMENTS.

"The FLSA was created to eliminate low wages and long hours as well as to free commerce from the interferences arising from production of goods under conditions that were detrimental to the health and well being of workers." *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 320 (S.D.N.Y. 2007) (*citing McGuiggan v. CPC Int'l, Inc.*, 84 F.Supp.2d 470, 478 (S.D.N.Y.2000)). In furtherance of these broad remedial

---

[3]     *See* Defendant's Original Answer (Answer) at ¶ 7, *Pickering v. Twenty Ones, Inc.*, Index No. 07 Civ 4798 (Aug. 6, 2007).

[4]     *See* www.the4040club.com.

[5]     *See* Answer at ¶¶ 8-9.

[6]     *See, e.g., Williams* Complaint at ¶ 5 and *Pickering* Complaint at ¶ 8.

[7]     Sec. Amend. Complaint ¶ 7.

[8]     *See Williams v. Twenty Ones, Inc.*, Index No. 07-CV-3978 at Doc. Nos. 2-12, 13-21 and 36-37.

2

goals, the FLSA generally requires employers to pay employees at least the minimum wage (currently $5.85) for each hour worked.  29 U.S.C. § 206(a)(1).

While the FLSA allows employers to take a credit for the tips received by certain employees, employers who wish to take this "tip credit" must meet certain criteria.  29 U.S.C. § 203(m).  For example, the employer must pay its "tipped employees" a minimum "direct wage" *irrespective* of the amount the employees receive in tips.  *Chung v. New Silver Palace Rest., Inc.*, 246 F.Supp.2d 220, 228 (S.D.N.Y.2002)(tipped employees must receive minimum cash wage directly from employer regardless of amount of tips earned); *Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749 *3 n.7 (S.D.N.Y. 2006)(same).  In addition, the employer must permit tipped employees to retain all the tips they receive.  29 U.S.C. § 203(m).  Thus, an employer cannot retain any portion of its employees' tips, nor can it charge tipped employees for customers who walk out without paying their bills.  *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.35; Dept. of Labor Fact Sheet #16 (Nov. 2007) *available at* www.dol.gov/esa/regs/compliance/whd/whdfs16.pdf.  An employer who violates the FLSA's tip credit requirements owes the affected employees the full minimum wage for all hours worked (again, irrespective of the amount of tips the employees have received).  *See Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977) (unless an employer adheres "precisely" to the tip credit requirements, the employer "gets no [tip] credit.").

The FLSA also requires employers to pay "overtime" to employees who work more than 40 in a workweek.  29 U.S.C. § 207(a)(1).  Specifically, employers must pay employees at least one-and-a-half times their regular rate of pay for each hour worked in excess of 40 in a week.  *Id.*  Payment at anything less than the required time and a half

3

violates the FLSA as a matter of law. *Mascol v. E & L Transp., Inc.*, 387 F.Supp.2d 87, 96 (E.D.N.Y. 2005).

The wages owed under the FLSA must be paid promptly. *See, e.g., Rogers v. City of Troy, NY*, 148 F.3d 52, 55 (2nd Cir. 1998); *U.S. v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2nd Cir.1960). An employer who fails to pay in accordance with the FLSA is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). As set forth below, Defendants violate each of these requirements and are, therefore, liable to their employees for unpaid minimum and overtime wages.

### C.    THE FLSA'S COLLECTIVE ACTION PROCESS.

In addition to creating substantive remedies, the FLSA gives employees the right to bring a "collective action" on behalf of "themselves and ***other employees similarly situated***." 29 U.S.C. § 216(b) (emphasis added). Unlike a class action pursuant to Federal Rule of Civil Procedure 23 (Rule 23), employees who wish to be part of a collective action must affirmatively opt-in by filing a written consent. *See, e.g., Masson v. Ecolab, Inc.*, 2005 WL 2000133 at *13 (S.D.N.Y. Aug. 17, 2005); *Mazur v. Olek Lejbzon & Co.*, 2005 WL 3240472 at *4 (S.D.N.Y. Nov. 30, 2005). Moreover, the requirements of Rule 23 – such as numerosity, typicality, commonality, and representativeness - do not apply to an FLSA collective action. *Id.* "Rather, in deciding whether to authorize a collective action notice under the FLSA, the only issue for the Court is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Id.* (citations and internal quotation marks omitted).

"Courts generally determine the appropriateness of class certification at two stages: first, on the initial motion for conditional class certification, and second, after discovery." *Fasanelli*, 516 F.Supp.2d at 321 (citations omitted). "Accordingly, a Court first determines whether class members are similarly situated based on pleadings and affidavits." *Id., citing Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005); *Cuzco v. Orion Builders, Inc*. 477 F.Supp.2d 628, 632 (S.D.N.Y. 2007). "Following this determination, notification of class members proceeds according to a court-ordered plan, providing the opportunity for those notified to "opt-in" to the action." *Id., citing Scholtisek*, 229 F.R.D. at 387. "After discovery, the Court re-examines the record to determine whether the claimants are indeed similarly situated." *Id.* "If they are not, the class can be decertified at that time and the claims of dissimilar 'opt-in' plaintiffs dismissed without prejudice." *Id.*

### 1. The Lenient Standard Applicable at the First Step.

Neither the FLSA nor its implementing regulations define "similarly situated." *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y.1997). "However, when determining whether a matter shall proceed as a collective action, courts should be mindful of the remedial purposes of the FLSA." *Fasanelli,* 516 F.Supp.2d at 321; *see also Braunstein v. Eastern Photographic Labs, Inc* ., 600 F.2d 335, 336 (2nd Cir. 1978) (noting the court's authority to send notice to "similarly situated" employees "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits"). Therefore, the burden plaintiffs must meet to obtain conditional certification is "minimal." *Id.*, *citing Cuzco*, 477 F.Supp.2d at 632-33; *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 101, 106 (S.D.N.Y.2003); *see also, Iglesias-Mendoza v. La Belle Farm, Inc.*,

5

239 F.R.D. 363, 368 (S.D.N.Y. 2007). "In this Circuit, courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Lewis v. National Financial Sys., Inc.*, 2007 WL 2455130, *3 (E.D.N.Y. Aug. 23, 2007)(citations omitted).

In determining whether potential opt-in plaintiffs may be similarly situated, courts do not weigh the merits of the underlying claims. *See, e.g., Mazur*, 2005 WL 3240472 at *4 ("A Plaintiff need not show an actual violation of the law."). "[T]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Services Auto. Ass'n*, 2007 WL 1288582, at *11 (S.D.N.Y. April 26, 2007) (*citing Barrus v. Dick's Sporting Goods, Inc.*, 465 F.Supp.2d 224, 230 (W.D.N.Y. 2006)). "The focus ... is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated ... with respect to their allegations that the law has been violated." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

Once the court determines that potential opt-in plaintiffs may be similarly situated for the purposes of authorizing notice, the court "conditionally certifies" the collective action. Plaintiffs then send court-approved notice to potential members who may elect to "opt-in" pursuant to section 216(b) by filing recent consents. The action proceeds as a collective action throughout the discovery process. *Masson*, 2005 WL 2000133 at *13 (citation omitted).

### 2. The Second Step.

As discussed above, the determination made at the first step is merely a preliminary finding. If, after discovery, it is apparent that plaintiffs and others are not similarly situated, the court may "decertify" the collective and dismiss the claims of the opt-in plaintiffs without prejudice. *See, e.g., Gjurovich,* 282 F. Supp. 2d at 104 n. 1. The named plaintiffs then proceed to trial on their individuals claims.

## III. ARGUMENT.

### A. DEFENDANTS' POLICIES AND PRACTICES VIOLATE THE FLSA.

#### 1. The Club does not pay its employees proper minimum wages

##### a. The Club does not pay its employees any direct wage.

As noted above, the FLSA requires the Club to pay its employees a minimum direct wage, irrespective of how much they earned in tips. *Chung,* 246 F.Supp.2d at 228; *Chan*, 2006 WL 851749 at *3 n.7. However, the Club does not pay its tipped employees a direct wage at all. For example, Plaintiffs Garibaldi, Gillette, Hall, Masotta, Pownall, Raz, Sturman and Williams each testify that the Club did not pay them any direct wage at all. Instead, these workers – and other tipped employees like them - earned only tips.[9] (All Plaintiff declarations submitted in support of this motion are contained in the Appendix of Exhibits under Exhibit C).

---

[9] Declaration of Julie Garibaldi ("Garibaldi Dec.") ¶¶ 4 & 12; Declaration of Anita Gillette ("Gillette Dec.") ¶¶ 4 & 12; Declaration of Latresha Hall ("Hall Dec.") ¶¶ 4 & 12; Declaration of Alex Masotta ("Masotta Dec.") ¶¶ 4 & 12; Declaration of Christopher Pownall ("Pownall Dec.") ¶¶ 4 & 12; Declaration of Therese Raz ("Raz Dec.") ¶¶ 4 & 12; Declaration of Brandon Sturman ("Sturman Dec.") ¶¶ 4 & 12; Declaration of Celeste Williams ("Williams Dec.") ¶¶ 4 & 12.

**b.     The Club retains a portion of its employees' tips**

"Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung*, 246 F.Supp.2d at 230; *see also Chan v. Sung Yue Tung Corp.*, 2007 WL 313483 at *17 (S.D.N.Y. Feb. 1, 2007) (*Chan II*). Rather, employers must either "allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage." *Chung*, 246 F.Supp.2d at 230; *see also Ayres v. 127 Restaurant Corp.*, 12 F.Supp.2d 305, 308-09 (S.D.N.Y.1998) (tip pool invalid because of management to participation; employer had to "disgorge the amount of tip credit deducted from each plaintiff's wages."). Therefore, although the FLSA permits employers to take a credit against the minimum wage for tips received by certain tipped employees, the Club is not entitled to this credit because it retains portions of employees' tips. 29 U.S.C. § 203(m).

(1)     The Club charges its servers for "walk-outs"

The Club retains portions of its hourly employees' tips to cover for customers that leave the Club without paying for their bill ("walk-outs").[10] When a walk-out occurred, The Club's management either forced its servers to pay the unpaid bill out of their own pockets or withheld tips by forcing them to pay the bill in a separate transaction.[11] The Club makes sure its employees are aware of this illegal policy by including in the "Server

---

[10]   Garibaldi Dec. ¶ 13; Gillette Dec. ¶ 13; Hall Dec. ¶ 13; Masotta Dec. ¶ 13; Pownall Dec. ¶ 13; Raz Dec. ¶ 13; Sturman Dec. ¶ 13; Williams Dec. ¶ 13.

[11]   Garibaldi Dec. ¶ 13; Gillette Dec. ¶ 13; Hall Dec. ¶ 13; Masotta Dec. ¶ 13; Pownall Dec. ¶ 13; Raz Dec. ¶ 13; Sturman Dec. ¶ 13; Williams Dec. ¶ 13.

8

Quiz" it gives to new employees.[12] Numerous employees were victimized by this policy[13] which, as set forth above, violates the FLSA. *See, e.g.,* 29 C.F.R. § 531.35.

### (2) The Club charges its servers for breakages and spills

The FLSA does not permit an employer to transfer to its employees the responsibility for the expenses of carrying on an enterprise." *Reich v. Priba Corp.*, 890 F.Supp. 586, 596 (N.D.Tex. 1995)(citing 29 C.F.R. § 531.3(d)(2) & 29 C.F.R. § 531.32(c)). Nonetheless, the Club retains a portion of its servers' tips by requiring them to pay for breakages and spills.[14] For example, Plaintiff Raz personally testified that she was required to contribute a portion of her pay for such expenses.[15]

### (3) The Club withholds credit card tips in certain instances

The Club also retains a portion of its servers' tips by withholding them under certain circumstances.[16] If a credit card customer fails to sign the receipt, The Club retains the entirety of the server's tip on that transaction for ninety (90) days.[17] The Club

---

[12] Gillette Dec. ¶ 13 and attachment F (noting the server would be required to pay for any customer who "leaves without paying for a check.").

[13] Garibaldi Dec. ¶ 13; Gillette Dec. ¶ 13; Masotta Dec. ¶ 13; Sturman Dec. ¶ 13.

[14] Gillette Dec. ¶ 14; Hall Dec. ¶ 14; Pownall Dec. ¶ 14; Raz Dec. ¶ 14; Sturman Dec ¶ 14; Williams Dec. ¶ 14.

[15] Raz Dec. ¶ 14; *see also,* Gillette Dec. ¶ 14.

[16] Garibaldi Dec. ¶ 11; Gillette Dec. ¶ 11; Hall Dec. ¶ 11; Masotta Dec. ¶ 11; Pownall Dec. ¶ 11; Raz Dec. ¶ 11; Sturman Dec. ¶ 11; Williams Dec. ¶ 11.

[17] Garibaldi Dec. ¶ 11; Gillette Dec. ¶ 11; Hall Dec. ¶ 11; Masotta Dec. ¶ 11; Pownall Dec. ¶ 11; Raz Dec. ¶ 11; Sturman Dec. ¶ 11; Williams Dec. ¶ 11.

9

furnishes this policy to its servers in writing.[18]  Consistent with this policy, Defendants retained the tips of numerous employees.[19]

### 2. The Club Fails to Pay Overtime for All Hours Worked in Excess of 40 in a Workweek.

The Club does not pay its hourly employees one and one half times their regular rate for hours worked in excess of 40 hours per week.  Plaintiffs Branch, Garibaldi, Gillette, Hall, Masotta, Pickering, Pownall, Raz, Sturman, and Williams testify that they were not compensated at one-and-one-half times their regular hourly rate for overtime.[20]  While Defendants routinely paid straight time – rather than time and a half – for overtime hours, Defendants also failed to pay for some overtime hours at all.

---

[18]    Garibaldi Dec. attachment D; Gillette Dec. attachment D; Hall Dec. attachment D; Pownall Dec. attachment D; Raz Dec. attachment D;  Sturman Dec. attachment C; Williams Dec. attachment A.

[19]    Gillette Dec. ¶ 11; Sturman Dec. ¶ 11; *see also*, Garibaldi Dec. ¶ 11; Masotta Dec. ¶ 11.

[20]    Declaration of Sheron Branch ("Branch Dec.") ¶ 9; Garibaldi Dec. ¶ 6; Gillette Dec. ¶ 6; Hall Dec. ¶ 6; Masotta ¶ 6; Declaration of Kishma Pickering ("Pickering Dec.") ¶ 9; Pownall Dec. ¶ 6; Raz Dec. ¶ 6; Sturman Dec ¶ 6; Williams Dec. ¶ 6.

Defendants' own "records" confirm these violations.[21]  For example, the Employee Earnings Report for Branch establishes the Club routinely paid her at her regular hourly rate for hours worked in excess of forty in a week.[22]  This same "straight time for overtime" scheme is also reflected on Plaintiffs Miller's and Pickering's payroll records.[23]  In addition, the "Payroll Report" Defendants produced for Plaintiff Garibaldi - even if credited - shows any "overtime" paid was paid at Garibaldi's regular rate instead of an overtime rate.[24]  Thus, the evidence shows Defendants engaged in a wide-spread straight-time-for-overtime scheme in violation of the FLSA. *Mascol*, 387 F.Supp.2d at 96.

---

[21]    Plaintiffs uniformly testify that they never received any payroll related documents such as paychecks, payroll reports or W-2 forms from the Club during their employment or prior to this lawsuit.  Garibaldi Dec. ¶¶ 5, 8 & 9; Hall Dec. ¶¶ 5, 8 & 9; Masotta ¶¶ 5, 8 & 9; Pownall Dec. ¶¶ 5, 8 & 9; Raz ¶¶ 5, 8 & 9; Sturman Dec ¶¶ 5, 8 & 9; Williams Dec. ¶¶ 5, 8 & 9.  Plaintiff Gillette testified that she only received paychecks after constant demands to management and that, even then, they did not reflect any pertinent information.  Gillette Dec. ¶ 6.  Thus, the Club's payroll "records" are submitted only to show that even if they were accurate, The Club violated the FLSA. As the declarants note, they have no independent means of verifying or reason to believe that any of the amounts reflected in the "records" are accurate.  Garibaldi Dec. ¶¶ 8 & 9; Gillette Dec. ¶¶ 8 & 9; Hall Dec. ¶¶ 8 & 9; Masotta ¶¶ 8 & 9; Pownall Dec. ¶¶ 8 & 9; Raz ¶¶ 8 & 9; Sturman Dec ¶¶ 8 & 9; Williams Dec. ¶¶ 8 & 9.

[22]    Exhibit D (*see*, *e.g.*, two week pay period ending 4/16 reflecting 120 hours of work at the straight hourly rate of $12.00 per hour and gross pay of $1,440.00).

[23]    Exhibit E, p. 1 (*see*, *e.g.*, pay stub for two week pay period 12/25/06 to 1/7/07 reflecting 91.5 hours of work at straight hourly rate of $15.00 per hour and gross pay of $1372.50); Exhibit F, p. 2 (*see*, *e.g.*, pay stub for two week pay period 1/9/06 to 1/22/06 reflecting 105 hours of work at straight hourly rate of $12.00 per hour and gross pay of $1260.00).

[24]    Garibaldi Dec. ¶ 6 and attachment A.  The Club's own time report reflects that for the workweek ending June 25, 2006, Garibaldi worked eight (8) hours of overtime.  The time report shows, however, that - at best - Garibaldi was paid her supposed hourly rate of $3.65.  Notably, the alleged Employee Earnings Records (attachment B) gives a *different* hourly rate ($4.35) and reflects that Garibaldi was not paid any overtime at *all*.

11

Moreover, Defendants' documents confirm that some overtime hours simply go unpaid altogether. For example, although Plaintiff Pickering clocked over 109 hours in the pay period ending January 22, 2006, she was only paid for 105 hours. *See* Exhibit F. When Pickering worked over 108 hours in the following pay period, she was again paid for only 105 hours (and, again, all overtime was paid at straight time). *Id.* Similarly, although Plaintiff Gillette clocked more than 100 hours for the pay period ending June 11, 2006, she was paid for a mere 70 hours. *See* Exhibit G.

### B. PLAINTIFFS MEET AND EXCEED THE MINIMAL STANDARD FOR CONDITIONAL CERTIFICATION.

Far exceeding a "modest factual showing," Plaintiffs have submitted substantial evidence of the Club's unlawful common policy and practice of failing to pay their minimum and overtime wages. At this early stage, a total of eight people have already asserted the allegations in the Second Amended Complaint against Defendants. Twelve other employees have indicated their by opting into the lawsuit. Plaintiffs have submitted declarations from several employees who suffered from the wage and hour violations that are rampant at The Club. Eight declarants testify that The Club charged its servers for walk-outs.[25] The same eight declarants testify that they did not receive any direct wage at all from The Club.[26] Six declarants testify that the Club required its servers to pay for breakages and spills.[27]

---

[25] Garibaldi Dec. ¶ 13; Gillette Dec. ¶ 13; Hall Dec. ¶ 13; Masotta Dec. ¶ 13; Pownall Dec. ¶ 13; Raz Dec. ¶ 13; Sturman Dec. ¶ 13; Williams Dec. ¶ 13.

[26] Garibaldi Dec. ¶¶ 4 & 12; Gillette Dec. ¶¶ 4 & 12; Hall Dec. ¶¶ 4 & 12; Masotta Dec. ¶¶ 4 & 12; Pownall Dec. ¶¶ 4 & 12; Raz Dec. ¶¶ 4 & 12; Sturman Dec. ¶¶ 4 & 12; Williams Dec. ¶¶ 4 & 12.

[27] Gillette Dec. ¶ 14; Hall Dec. ¶ 14; Pownall Dec. ¶ 14; Raz Dec. ¶ 14; Sturman Dec ¶ 14; Williams Dec. ¶ 14.

Further, ten declarants testify that they were not properly compensated for overtime.[28] The declarants learned from other employees that, as a rule, the Club did not pay any direct wages to its employees who earned tips.[29] Similarly, the declarants know from other employees that the Club does not pay time-and-a-half for overtime.[30] Even the Club's own suspect records bear out the fact that the Club did not pay overtime properly.[31] Thus, in addition to their personal experiences, the declarants have provided the Court with a more than reasonable basis to find that their experience is typical of all Covered Employees.

The allegations in the Complaint and the declarations, if proven, demonstrate that the Club maintains illegal policies and practices which affect all its non-exempt employees. While courts routinely authorize notice on thinner records,[32] Plaintiffs' robust showing clearly warrants the issuance of collective action notice at this lenient stage of the proceedings.

---

[28] Branch Dec. ¶ 9; Garibaldi Dec. ¶ 6; Gillette Dec. ¶ 6; Hall Dec. ¶ 6; Masotta ¶ 6; Pickering Dec. ¶ 9; Pownall Dec. ¶ 6; Raz Dec. ¶ 6; Sturman Dec ¶ 6; Williams Dec. ¶ 6.

[29] Garibaldi Dec. ¶¶ 4 & 12; Gillette Dec. ¶¶ 4 & 12; Hall Dec. ¶¶ 4 & 12; Masotta Dec. ¶¶ 4 & 12; Pownall Dec. ¶¶ 4 & 12; Raz Dec. ¶¶ 4 & 12; Sturman Dec. ¶¶ 4 & 12; Williams Dec. ¶¶ 4 & 12.

[30] Garibaldi Dec. ¶ 6; Gillette Dec. ¶ 6; Hall Dec. ¶ 6; Masotta ¶ 6; Pownall Dec. ¶ 6; Raz Dec. ¶ 6; Sturman Dec ¶ 6; Williams Dec. ¶ 6.

[31] Garibaldi Dec. attachment A; Exhibit D; Exhibit E; Exhibit F.

[32] *See, e.g., Masson*, 2005 WL 2000133 at \*14 (three opt-ins); *Sipas v. Sammy's Fishbox, Inc.*, 2006 WL 1084556, at \*2 (S.D.N.Y. Apr. 24, 2006) (three affidavits); *Legrand v. Educ. Mgmt. Corp.*, 2004 WL 1962076, at \*2 (S.D.N.Y. Sept. 2, 2004) (three named plaintiffs); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002) (three affidavits); *Zhao*, 2001 WL 845000, \*\*2-3 (one affidavit based on Plaintiff's "best knowledge"); *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 376 (N.D.N.Y. 1995) (two affidavits in ADEA case); *Carter v. Indianapolis Power and Light Co.*, No. IP 102 CV 01812, 2003 WL 23142183, at \*1 (S.D. Ind. Dec. 23, 2003) (three affidavits and one opt-in).

**V.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court (i) conditionally certify this action as a representative collective action pursuant to the FLSA, 29 U.S.C. § 216(b); (ii) facilitate and authorize notice of this FLSA action to the Covered Employees; (iii) approve the proposed FLSA notice of this action with corrective language and the consent form;  (iv)order the identification of the Covered Employees in a computer readable data file containing their names, last known mailing addresses, telephone numbers, last known email addresses, work locations, and dates of employment; and (v) order Defendants to post the Notice and the consent forms in a place where Covered Employees will view it.

Dated:  January 15, 2008			Respectfully submitted for all Plaintiffs' counsel,

**BRUCKNER BURCH PLLC**

By: _____
    /s/ **Rex Burch**
    Richard J. (Rex) Burch
    *Admitted Pro Hac Vice*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: 713-877-8788
Facsimile: 713-877-8065

*Attorneys for Plaintiff,  proposed collective action members and proposed class*