LITTLER MENDELSON, P.C.
  Andrew P. Marks (AM-0361)
  Sara D. Sheinkin (SS-9719)
885 Third Avenue, 16th Floor
New York, New York  10022.4834
Tel:  212.583.9600
Fax:  212.832.2719
  Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| Celeste Williams, *et al.*,  on behalf of themselves and others similarly situated, | Case No. 07 CIV. 3978 (LAP) |
| Plaintiffs, | |
| -against- | |
| Twenty Ones, Inc., d/b/a The 40/40 Club, Shawn Carter p/k/a Jay-Z, Juan Perez and Desiree Gonzales, | |
| Defendants. | |

_____
_____

| | |
|---|---|
| Kishma Pickering and Sheron Branch, | Case No. 07 Civ. 4798 (LAP) |
| Plaintiffs, | |
| -against- | |
| The 40/40 Club, Twenty Ones Incorporated, Jay-Z a/k/a Sean Carter, Juan Perez, and Desire Gonzalez Perez, | |
| Defendants. | |

_____

_____

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

_____

TABLE OF CONTENTS

PAGE

I.    PRELIMINARY STATEMENT................................................................1

II.   STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ..................2

      A.    Plaintiffs' Motion Encompasses Two Separate Complaints................................2

      B.    Facts Relating To Tipped Employees..................................................3

      C.    Facts Relating To Receptionists......................................................5

III.  PLAINTIFFS' DECLARATIONS SHOULD BE DISREGARDED..............................5

IV.   LEGAL ANALYSIS ...........................................................................9

      A.    Plaintiffs Have Not Met The Standard For Conditionally Certifying A
            Collective Action Under Section 216(b) ...........................................9

      B.    Members Of The Putative Class Are Not "Similarly Situated"..........................11

            1.    Plaintiffs Have Not Identified A Common Policy Or Practice That
                  Resulted In A Violation Of The FLSA's Minimum Wage
                  Provision........................................................................11

                  a.    Plaintiffs Claim That They Received No Hourly Wage..............11

                        (i)    Plaintiffs Have Not Demonstrated A Violation Of
                               The FLSA .....................................................12

                        (ii)   Individual Analyses Render Conditional
                               Certification Inappropriate ...............................13

                  b.    Plaintiffs Claim That The Club Retained Their Tips .................14

                        (i)    Plaintiffs Have Not Demonstrated A Violation Of
                               The FLSA .....................................................14

                        (ii)   Individual Analyses Render Conditional
                               Certification Inappropriate ...............................15

            2.    Plaintiffs Have Not Identified A Common Policy Or Practice That
                  Resulted In A Violation Of The FLSA's Overtime Provision ...............17

                  a.    The *Williams* Plaintiffs Are Not Similarly Situated To
                        Other Employees .....................................................17

                  b.    The *Pickering* Plaintiffs Are Not Similarly Situated To
                        Other Employees .....................................................18

V.    PLAINTIFFS' PROPOSED NOTICE SHOULD BE REJECTED.................................19

VI.   CONCLUSION...................................................................................20

**TABLE OF AUTHORITIES**

**PAGE**

## CASES

*Asselin v. Waldron*, 2004 WL 57083 (D.N.H. Jan. 13, 2004)........................................................9

*Barfield v. New York City Health & Hospitals Corp.*, 2005 WL 3098730
    (S.D.N.Y. Nov. 18, 2005)........................................................8

*Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628 (S.D.N.Y. 2007)...........................................10

*D'Anna v. M/A-COM, Inc.*, 903 F.Supp. 889 (D. Md. 1995)........................................................19

*Davis v. B&S, Inc.*, 38 F. Supp. 2d 707 (N.D. Ind. 1998)............................................................15

*Diaz v. Electronics Boutique of America, Inc.*, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005)....13

*Evancho v. Sanofi-Aventis U.S. Inc.*, 2007 WL 4546100 (D.N.J. Dec. 19, 2007).........................9

*Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042 (N.D. Ill. 2003)...................................18, 19

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997)........................................................9

*Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989)............................................................9

*Jimenez v. Lakeside Pic-N-Pac, L.L.C.*, 2007 WL 4454295 (W.D. Mich. Dec. 14, 2007).....10, 12

*Lawrence v. City of Philadelphia*, 2004 WL 945139 (E.D. Pa. Apr. 29, 2004)...........................14

*Morales v. Plantworks, Inc.*, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006)..............................17, 19

*Morisky v. Public Serv. E&G Co.*, 111 F. Supp. 2d 493 (D.N.J. 2000).......................................16

*Neary v. Metropolitan Property and Cas. Ins. Co.*, 517 F. Supp. 2d 606 (D. Conn. 2007)..........10

*Prizmic v. Armour, Inc.*, 2006 WL 1662614 (E.D.N.Y. June 12, 2006)........................................9

*Richards v. Computer Sciences Corp.*, 2004 WL 2211691 (D. Conn. Sep. 28, 2004)...................8

*Robinson v. Dolgencorp, Inc.*, 2006 WL 3360944 (M.D. Fla. 2006)...........................................10

*West v. Border Foods, Inc.*, 2006 WL 1892527 (D. Minn. June 12, 2006)................10, 13, 16, 18

*Williams v. Accredited Home Lenders, Inc.*, 2006 WL 2085312 (N.D. Ga. July 25, 2006)..........13

**PAGE**

**STATUTES**

29 U.S.C. § 203(m)...................................................................................... 3

29 U.S.C. § 216(b)........................................................................8, 10, 16

## I.    PRELIMINARY STATEMENT

Plaintiffs deceive from the outset.  They open their brief by claiming "this case is about whether the employees who are owed wages will be given a chance to recover them."  (Pls.' Br. at 1.)  Yet where employees have demonstrated any error was made in their wages, defendants have offered to and/or have corrected the error.  As a result, several plaintiffs have withdrawn from the litigation.  Rather than value such efficient resolution, counsel has tried to intimidate such individuals to rejoin their lawsuit.  (*See* Lauren Cruz e-mail.[1])  Reports of these litigations have appeared in newspapers and web sites.  In one of the first communications between counsel, defendants were instructed to "send over a bag of money."  In response to defendants' motion to dismiss the complaint against Shawn Carter p/k/a Jay-Z on the grounds that he is not an "employer" but named merely for publicity, plaintiffs amended their complaint to allege elements of control and supervision.  Yet not a single plaintiff substantiated those allegations.  So this case is not about employees recovering wages, it is about lawyers conglomerating isolated payroll complexities and prosecuting this case for their own aggrandizement.

It is not surprising then that the motion for conditional certification is premised chiefly on hearsay, hyperbole and misrepresentations.  But under any standard for certifying a collective action, there must be some credible showing that putative class members were victims of a common policy or plan that violated the Fair Labor Standards Act.  Here, when the facts are separated from the fictions drafted by plaintiffs' counsel, plaintiffs fail to meet this burden.  The goal of allowing employees who are owed wages to recover them is best served by proceeding apace to resolve plaintiffs' claims individually, rather than continuing to litigate collective and class action issues that do not benefit the actual plaintiffs.

---

[1] Exhibits referenced herein are attached to the Affirmation of Sara D. Sheinkin in Opposition to Plaintiffs' Motion for Conditional Certification

## II.    STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY[2]

The 40/40 Club is a sports bar and lounge in Manhattan, which opened in June 2003. Individual defendant Desiree Gonzales-Perez is the Club's General Manager.   Individual defendants Shawn Carter (a/k/a Jay-Z) and Juan Perez have ownership interests in the Club, but exercise no day-to-day operational control over the Club's employees.   (*See* Affidavit of Desiree Gonzles-Perez, originally submitted in support of defendants' motion to dismiss.)

### A.    Plaintiffs' Motion Encompasses Two Separate Complaints

In May 2007, Celeste Williams filed a complaint against the Club on behalf of herself and others purportedly similarly situated.   Each of the current named plaintiffs in the *Williams* matter was employed by the Club as a server or bartender receiving substantial  tips; none worked at the Club after October 2006.[3]   In their complaint, the *Williams* plaintiffs allege violations of the FLSA's minimum wage and overtime provisions.   In June 2007, plaintiffs Kishma Pickering and Sheron Branch filed a separate action against the Club.   Both *Pickering* plaintiffs worked at the Club as receptionists in 2005 and/or 2006.   The *Pickering* plaintiffs allege only violations of the FLSA's overtime provisions.[4]

Plaintiffs in both matters have filed a joint motion for conditional certification seeking to certify a class of, and send notice to, all non-exempt employees of the Club employed within the

---

[2] The facts cited herein are from plaintiffs' complaints and the Declaration or Desiree Gonzales-Perez.  *See also* Declarations of  tipped employees Afsar Ahmed, Gloria Alvarez, Edward DeMatteo, Mohammed Jahan, Amber Marsala, Joelle Martin, Shondell McDowell, Timothy McGuigan, David Navaratte, Larry Ram, and Jasmine Vargas.  *See also* Declarations of receptionists Timavia Cole, Yolanda Dent, Starry Parks, and Coralito Sosa.

[3] Four named and three opt-in plaintiffs have withdrawn their consents to participate in this matter and the authority of plaintiffs' counsel to represent them.  (*See* Withdrawal Forms.) There are currently only ten opt-in plaintiffs to the *Williams* matter and no opt-in plaintiffs to the *Pickering* matter.

[4] Plaintiffs also assert state law claims, which are not relevant for purposes of this motion.

last three years.  In addition to tipped employees and receptionists, this purported class would include runners, bussers, back of the house staff, and other office employees.  As demonstrated herein, plaintiffs are not similarly situated to this broad group of employees or, for that matter, to each other.  Thus, their motion for conditional certification should be denied.

### B.    Facts Relating To Tipped Employees[5]

The 40/40 Club's servers and bartenders are well compensated.  In addition to receiving significant gratuities from customers, the Club's tipped employees[6] receive an hourly wage from the Club.  The FLSA allows the Club to take a "tip credit" against the minimum wage by including in its calculation of wages a portion of the amount that the employees receive in tips.  29 U.S.C. § 203(m).  With tips and wages, the Club's tipped employees receive well in excess of the minimum wage.

Employees' paychecks are available for pick up in the Club's office.  As is common in the restaurant industry, the tipped employees' paychecks are regularly "void."  This occurs because the Club must deduct income tax, employee social security tax, and employee Medicare tax based on employees' earnings from both regular wages and tips.  Because the Club does not take possession of tips, deductions are taken from the tipped employees' relatively minimal wage portion of income.[7]  Knowing that their paychecks are often void, tipped employees do not always bother to retrieve them.

Until October 2007, the Club used Paychex to administer its payroll. Based on each employee's hours worked and hourly wage-rate, Paychex calculated the Club's payroll and

---

[5] The policies and practices described herein were in effect during plaintiffs' employment.

[6] The term "tipped employees" is used herein to refer collectively to servers and bartenders – the two positions at the Club that receive tips from customers.

[7] In anticipation of this result, the IRS created an ordering system of how the withholdings should be allocated.  *See* Internal Revenue Service, Publication 15, Employer's Tax Guide, at 13.

processed employees' paychecks. The Club currently uses ADP to perform these functions. All employees are instructed to clock in and out on the Club's "positouch" computer system. Upon clocking out, tipped employees are supposed to declare the tips they earned that night. The Club closes no later than 4:00 a.m. and, during the week, regularly closes earlier. Once the Club is closed, tipped employees must cash out and perform minimal side work; tasks taking an hour or less to complete. If a tipped employee fails to clock out, his or her time records will incorrectly indicate that they worked until 6:45 a.m., the time at which the Club's positouch system automatically recycles.[8] However, there would be no reason for any tipped employee to "work" until 6:45 a.m. and manual adjustments to payroll are sometimes required.

The Club's computer system permits tipped employees to add a 20% gratuity to their customers' bills. Tipped employees collect and hold their tips, together with the Club's sales income, throughout their shift. During the cash out process, each tipped employee remits sales money to the Club, retaining cash for credit card tips the employee received. The Club's tipped employees generally receive more cash than credit card payments and, therefore, usually do not receive money from the Club in tips. However, on the rare occasions where the cash received by the employee is less than the credit card tips earned, the Club pays the employee the balance. At all times, tipped employees go home with all of the tips they earned that night, other than amounts tipped out to or pooled with other employees. Tipped employees also receive gratuities for parties which are either paid to the employees in cash at the end of the night, or by check shortly thereafter.

Understandably, the Club requires tipped employees to take precautions to ensure that customers pay for all of the items they order. Customers paying cash must do so upon delivery

---

[8] *See, e.g*, the time records for Celeste Williams, who acknowledges that she never clocked out on the Club's positouch system. (Williams Dep. at 48.)

of their order.  Where a customer prefers to keep a tab open, the tipped employee takes and holds the customer's credit card and a photo identification.  The tipped employee also pre-authorizes and imprints the credit card.  When the tab is closed, the customer must sign the sales slip and credit card imprint.  These procedures, if followed, make it impossible for a customer to leave the Club without paying.

There are occasions, however, when a customer leaves without signing the credit card slip or voucher.  In such cases, because the Club has not received all necessary authorization for the full charge, it does not immediately provide the tipped employee with the 20% tip indicated on the bill.  Rather, the Club waits ninety days to determine whether the customer disputes the charge.  If the charge is not disputed, the employee then collects the tip.

### C.    Facts Relating To Receptionists

The Club's receptionists receive an hourly rate in excess of the minimum wage.  Both *Pickering* plaintiffs received an hourly wage rate of $12 per hour.  Like the tipped employees, receptions are required to record their hours worked by clocking in and out on the Club's positouch computer system.

To the extent that the Club failed, on any occasion, to pay plaintiffs their proper wages, such failure was inadvertent.  Employees are instructed to direct any questions or problems concerning their wages to a manager.  The *Williams* and *Pickering* plaintiffs failed to do so, so the Club never received notice of any alleged errors concerning their wages.  Plaintiffs also failed to submit payment correction forms for any alleged errors in their wages, although such forms are readily available to all of the Club's employees.

## III.    PLAINTIFFS' DECLARATIONS SHOULD BE DISREGARDED

Had plaintiffs' counsel drafted individual declarations describing the experience and knowledge of each individual plaintiff, they would have exposed the lack of commonality among

plaintiffs' claims.[9]   Recognizing this problem, plaintiffs' counsel instead drafted a fourteen paragraph form declaration that plaintiffs were instructed to sign.  Apparently however, plaintiffs were not instructed to read carefully their declarations before signing, for at their depositions they claimed a lack of knowledge concerning many of "their" statements, or worse, actually disavowed portions of the content therein.   Accordingly, plaintiffs' declarations should be stricken, or disregarded by the Court in its determination of plaintiffs' motion.

Plaintiffs' willingness to submit unsubstantiated testimony, and their counsel's participation therein, is perhaps most clearly illustrated by the statement in Therese Raz's declaration that a document had been shown to her by her counsel.  (Raz Decl. ¶ 9.)  Raz admitted in her deposition that she had never seen the document and that the statement that her attorney had shown it to her was false.  (Raz Dep. at 60-61.)

Plaintiffs' declaration testimony on the merits of their claims is similarly untrustworthy. In several cases, sworn statements are directly contradicted by the plaintiff's experiences.  For example, each declaration claims that the "Club forced employees to pay for breakages, spills and the like," suggesting that this was a common policy enforced by the Club.  Each plaintiff disavowed this declaration testimony, in whole or in part.[10]

---

[9] The plaintiffs referred to in this section are the named and opt-in plaintiffs in the *Williams* matter who have appeared for their depositions.  Defendants have not yet deposed the remaining *Williams* plaintiffs, or either of the *Pickering* plaintiffs, concerning the validity of their declarations, although many of their depositions have been noticed.

[10] Anita Gillette, Christopher Pownall, Brandon Sturman and Celeste Williams all testified that the Club never required them to pay for breakages or spills, and that they have no personal knowledge of the Club requiring any other employee to do so.  (Pownall Dep. at 46-47; Sturman Dep. at 138-39; Williams Dep. at 62-63.)  Gillette further admitted to the falsity of the statement in her declaration that she "personally witnessed" this happen to another.  (Gillette Dep. at 103-06.)  Only Raz testified that she was forced to pay for a breakage, although she admits that she paid money to a co-worker, not to a manager of the Club.  (Raz at Dep. 67-69.)

Each plaintiff also admitted to the speciousness of the tenth paragraph in the declaration, which states:

> I believe that portions of my tips were retained by defendants. The 40/40 Club did not provide us with, or require us to fill out, any sort of tip declaration form. Because The 40/40 Club did not provide us with any records establishing the amount of tips I should have received, I have no independent means of verifying these amounts. However, based on the tips given to me by patrons and what was eventually paid to me by defendants, I believe that I did not receive all of my tips due.

This declaration testimony simply did not stand up to inquiry. At their depositions, plaintiffs acknowledged that the Club required them to declare their tips at the end of each shift when they clocked out. (Gillette Dep. at 34, 94; Pownall Dep. at 70; Raz Dep. at 31; Sturman Dep. at 149.) Although they suggest in their declarations that the Club was in possession of their tips and later "paid" it out to plaintiffs, plaintiffs admitted in their depositions that they held the tips they received from the customers, as well as the cash received from sales, throughout their entire shift. (Gillette Dep. at 32, 47-48; Raz Dep. at 20-21; Sturman Dep. at 76-83; Williams Dep. at 50-53.) It was plaintiffs who turned money in to the Club at the end of the shift, not the other way around. At all times, therefore, plaintiffs had full knowledge of the amount of tips they received from customers, and went home each night with that full amount, other than what they tipped out to, or shared with, their co-workers. (Gilette Dep. at 95; Pownall at 65-67; Raz Dep. at 20-21; Sturman Dep. at 151-52; Williams Dep. at 53-54.)[11]

Plaintiffs' testimony also reveals that the alleged "common" policies and practices identified in their declarations were not, in fact, common to all plaintiffs. For instance, plaintiffs claim it was a common practice of the Club to not provide W-2s. (Pls.' Decls. ¶ 9.) Pownall and

---

[11] Whether plaintiffs properly paid income taxes on those tips is unknown because they have refused to produce their tax returns and invoked the Fifth Amendment to questions asked at their depositions.

7

Raz, however, both acknowledged that they received a W-2; although Raz falsely claimed in her declaration that she had not. (Pownall Dep. at 11; Raz Dep. at 55-56.) Similarly, Williams recanted her prior declaration testimony concerning knowledge of a policy whereby the Club retained disputed tips, or forced employees to pay a customer's bill. (Williams Dep. at 66-67.) Other misrepresentations in plaintiffs' declarations include the length of time that plaintiffs' worked at the Club, [12] the hours that they worked,[13] and their knowledge concerning the hours worked by other employees.[14]

Even if inadvertent rather than perjurious, plaintiffs' declarations must be disregarded to the extent that they are not based on personal knowledge, offer inadmissible hearsay or conclusory allegations, and/or directly and materially conflict with their deposition testimony. *See e.g.*, *Richards v. Computer Sciences Corp.*, 2004 WL 2211691, at *1-2 (D. Conn. Sep. 28, 2004) (adopting Rule 56(e)'s standard for determining whether to strike or disregard affidavits submitted in support of a § 216(b) motion for conditional certification); *Barfield v. New York City Health & Hospitals Corp.*, 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) (holding that anecdotal hearsay is *insufficient* to establish the existence of a widespread practice). For

---

[12] Although she only worked for three weeks in December 2005, Williams claims in her declaration that she worked from November 2005 through January 2006. (Williams Dep. 21-22; Williams Decl. ¶ 3.) Brandon Sturman also admitted that he did not work past December 2006, although in his declaration, he claims that he worked until February 2007. (Sturman Dep. at 28, 30; Sturman Decl. ¶ 3.)

[13] Raz admitted in her deposition that she generally worked less than 40 hours per week; not regularly more than 40 hours as stated in her declaration. (Raz Dep. at 36; Raz Decl. ¶ 6.) Pownall falsely claims in his declaration that the time report he attached thereto demonstrated that he was not paid time and a half for hours worked in excess of 40 in a week. (Pownall Decl. ¶ 6.) In fact, the time record demonstrates that Pownall had not worked more than 40 hours in any week. (Pownall Decl., Ex. A.)

[14] Plaintiffs admitted they had no specific knowledge concerning hours worked by other employees. (Raz Dep. at 34; Sturman Dep. at 104; Williams Dep. at 45-46.)

instance, where plaintiffs were unable to provide any specific information concerning alleged conversations they had with other employees, such statements are inadmissible and should be disregarded. *Asselin v. Waldron*, 2004 WL 57083, at *3 (D.N.H. Jan. 13, 2004) ("statements predicated upon undefined discussions with unnamed persons at unspecified times are simply too amorphous" to be admissible).

While defendants have not pointed out all the ways in which plaintiffs' declarations are deficient, defendants have amply demonstrated plaintiffs' failure to provide declarations on which this Court can rely. Accordingly, defendants request that the Court strike or disregard plaintiffs' declarations. Furthermore, to the extent that the Court will rely on the declarations of the other named and opt-in plaintiffs in deciding plaintiffs' motion, defendants seek leave to depose them and submit supplemental briefing prior to the Court's determination.

## IV.   LEGAL ANALYSIS

### A.   Plaintiffs Have Not Met The Standard For Conditionally Certifying A Collective Action Under 29 U.S.C. § 216(b)

Whether the Court elects to intervene in this proceeding, as plaintiffs have requested, is a matter committed to the Court's discretion. Such discretion should be exercised only if plaintiffs demonstrate that they and potential class members are "similarly situated." *Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989); *Prizmic v. Armour, Inc.*, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006). At the initial stage of a litigation, prior to the completion of discovery, plaintiffs can meet this burden only by making a factual showing that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997). Unsupported assertions of widespread violations are insufficient to meet this standard. *See, e.g.*, *Evancho v. Sanofi-Aventis U.S. Inc.*, 2007 WL 4546100, at *2 (D.N.J. Dec. 19, 2007).

Furthermore, where, as here, individual plaintiffs must prove their own claims though separate mini-trials, a collective action does not preserve judicial resources and is not the most efficient method to adjudicate plaintiffs' claims. *See, e.g., Robinson v. Dolgencorp, Inc.*, 2006 WL 3360944, at *6 (M.D. Fla. 2006) ("[W]here a collective action would not serve the interests of judicial economy, plaintiffs should not be permitted to request court-supervised notice as a tool for drumming-up business.").  In such cases, courts should not implement the collective action mechanism under § 216(b) by facilitating class notice to potential plaintiffs.

In determining whether judicial economy will best be served by proceeding with collective actions in these matters, the Court should review plaintiffs' allegations and declarations in conjunction with the evidence gleaned through discovery. *See, e.g., Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 632 n.3 (S.D.N.Y. 2007) (considering evidence gathered through discovery in addition to pleadings and declarations); *Neary v. Metropolitan Property and Cas. Ins. Co.*, 517 F. Supp. 2d 606, 619-620 (D. Conn. 2007) (relying on evidence submitted by both parties).  Neither the remedial purposes of the FLSA nor the interests of judicial economy would be advanced if the Court were to overlook facts which generally suggest that a collective action is improper (such as plaintiffs' deposition testimony and the declarations submitted by defendants). *West v. Border Foods, Inc.*, 2006 WL 1892527, at *7 (D. Minn. June 12, 2006).  Although it is not the Court's role to decide the cases on the merits at this point, the Court has a responsibility to assure that there is some factual basis for plaintiffs' claims of class-wide violations of the law before authorizing notice to any putative class. *Jimenez v. Lakeside Pic-N-Pac*, L.L.C., 2007 WL 4454295, at *3 (W.D. Mich. Dec. 14, 2007).  Here, no such factual basis exists and plaintiffs' motion should be denied in its entirety.

**B.    Members Of The Putative Class Are Not "Similarly Situated"**

Plaintiffs contend that the Club "maintained policies and practices which resulted in non-exempt workers receiving less than the minimum wage and/or less than time and a half for each hour worked in excess of forty in a workweek."  (Pls.' Br. at 1.)  Plaintiffs, however, are an unrepresentative sample of the overly broad group they seek to represent and their motion is devoid of any showing that all non-exempt employees employed by defendants within the last three years were subject to any common policy or practice that violated federal law.  Plaintiffs' failure to demonstrate a factual nexus between the experiences of the individual members of the proposed class is fatal to their motion for conditional certification.

**1.    Plaintiffs Have Not Identified A Common Policy Or Practice That Resulted In A Violation Of The FLSA's Minimum Wage Provision**

Plaintiffs first assert that the Club "does not pay its employees proper minimum wages." (Pls.' Br. at 7.)  Plaintiffs do not argue that all non-exempt employees were denied minimum wage.  Rather, they assert only that the Club's "tipped employees" were denied minimum wage and, thus, implicitly concede that the *Williams* plaintiffs are not similarly situated to the expansive group they seek to represent.  In fact, because the Club compensated tipped employees in a manner unlike any other employees – by providing them with a 20% gratuity on all orders and taking a tip credit against their wages – plaintiffs could not have established, had they tried, that tipped employees are similarly situated to any other category of employee with respect to wage claims.  Accordingly, defendants will limit their argument in this section to explaining why the *Williams* plaintiffs are not entitled to conditional certification of a class of tipped employees.

**a.    *Plaintiffs Claim That They Received No Hourly Wage***

The *Williams* plaintiffs claim that the Club failed to pay them any direct wage.  This claim is premised on plaintiffs' allegations that they did not regularly receive their payroll

information and that, when they did, their paychecks were void. In her deposition, Raz acknowledged that receipt of a void paycheck would not be unexpected. (Raz Dep. at 47.) This occurred when the amount of money the Club withheld from plaintiffs' tips and wages equaled or exceeded the amount of wages due. Plaintiffs do not provide any specific examples of weeks in which they were underpaid. Rather, because they do not have a full understanding of how the tax withholdings on their tip income affected their wages, they simply think that they must be entitled to something. For instance, although Gillette understood that her tips were taxable income and subject to withholdings from her wages, she believed it was impossible for such withholdings to result in a check for no wages. (Gillette Dep. at 35, 82.) Gillette did not expect to receive a check for the full amount of her wages as if she had not been taxed on her tips, but thought she should get a check for a small amount, "like maybe a $12 check or a $40 check." (Gillette Dep. at 82; s*ee also* Williams Dep. at 35 (plaintiff did understand that the Club withheld from regular wages taxes imposed on tip income); Pownall Dep. at 73 (same).)

(i)      *Plaintiffs Have Not Demonstrated A Violation Of The FLSA*

Because plaintiffs cannot establish that their voided paychecks, or failure to claim their voided paychecks, resulted in payment of wages below the minimum wage on any particular occasion, their minimum and overtime wage claims are merely hypothetical. In *Jimenez,* 2007 WL 4454295, at *5-6, seasonal farm workers alleged that defendants systematically manipulated and failed to properly record work hours in furtherance of an overall company policy and procedure designed to deny plaintiffs their minimum wage. Plaintiffs successfully presented evidence of a uniform policy of not properly recording hours. Plaintiffs did not establish, however, that defendants' failure to properly record hours worked, in and of itself, necessarily resulted in payment of wages below minimum wage. At best, plaintiffs showed that defendants' system "might have resulted in wages below minimum wage on occasion." Because the

plaintiffs claims were merely hypothetical, the court denied plaintiffs' motion for collective action certification. The plaintiffs here have similarly failed to establish an actual violation of the FLSA – a necessary component of their burden to establish that conditional certification is appropriate.

(ii)    *Individual Analyses Render Conditional Certification Inappropriate*

Even if plaintiffs could establish that the Club's payroll scheme occasionally resulted in wages below the minimum wage, their claims would still be inappropriate for conditional certification. Because the Court would have to sort through evidence individual by individual to determine whether any employee had actually been denied wages, and, if so, the extent of the employee's damages, a collective action in this matter would be "utterly unmanageable," as it would require hundreds of small overtime claims, discovery of "mindboggling" cost, and "the waste of scarce judicial resources." *Williams v. Accredited Home Lenders, Inc.*, 2006 WL 2085312, at *5 (N.D. Ga. July 25, 2006). Specifically, to calculate wages due, the Court would need to determine the number of hours worked each week by each plaintiff, and the appropriate wage-rate for that plaintiff (discussed further below). The Court would then need to determine the amount of taxes that were withheld by the Club for each plaintiff. A plaintiff would only be entitled to damages if the amount of wages due exceeded the amount of the withholdings. Where, as here, plaintiffs' claims require significant individual considerations, they are inappropriate for conditional certification. *West*, 2006 WL 1892527, at *7 (denying motion for conditional certification where claim that plaintiffs worked off-the-clock required individual assessments); *Diaz v. Electronics Boutique of America, Inc.*, 2005 WL 2654270, at *5 (W.D.N.Y. Oct. 17, 2005) (where plaintiff's overtime claim required an examination of when he worked, whether he was paid for such, and whether his time records were altered, he was not similarly situated to other employees, for whom the court would also have to conduct the same

individualized inquiries).

To the extent that plaintiffs claim they worked unrecorded time, additional individual issues arise, as the Court would need individual testimony from each plaintiff concerning the amount of time that he or she allegedly worked on a day-by-day basis. Similarly, on occasions where plaintiffs failed to clock out, individual testimony as to the hours actually worked would be necessary. In comparable circumstances, courts have found that each individual's claims potentially vary too widely to conclude that the plaintiffs are similarly situated. For instance, the plaintiffs in *Lawrence v. City of Philadelphia,* 2004 WL 945139, at *2 (E.D. Pa. Apr. 29, 2004), alleged that they worked overtime hours off-the-clock and were not compensated for such. Because each plaintiff could potentially claim that on any given day he or she arrived early or departed outside of the regularly scheduled hours, questions of fact would likely differ for each plaintiff and, thus, make the management of a collective action unduly burdensome. Questions of fact will similarly differ for the *Williams* plaintiffs, who claim that they worked hours and days other than what their time reports document, making conditional certification unsuitable

### b. *Plaintiffs Claim That The Club Retained Their Tips*

The second component of the *Williams* plaintiffs' FLSA claim is that the Club was not entitled to a tip credit – and therefore did not pay minimum wage – because it retained portions of plaintiffs' tips. Plaintiffs claim that the Club retained their tips where: (1) a customer left without paying the bill; (2) a tipped employee broke or spilled something; or (3) a credit card customer failed to sign the receipt.

### (i) *Plaintiffs Have Not Demonstrated A Violation Of The FLSA*

Plaintiffs allege that because defendants retained their tips in the above-referenced manners, the Club was not entitled to take a tip credit against their wages. They do not allege – nor could they – that such tip retention was a violation of the FLSA in and of itself. Even if such

retention routinely took place, therefore, it would not constitute grounds for the Court to certify a collective action. Rather, the issue is only relevant to the appropriate calculation of damages for each individual plaintiff.

Furthermore, plaintiffs have not established that any of the alleged policies constituted an improper retention of tips, which occurs where an employer exercises control over a portion of employees' tips. *Davis v. B&S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998). Plaintiffs assert that the Club required them to pay for breakages, spills and unpaid bills. Even if true, requiring employees to pay for these items out of their pockets does not constitute an exercise of control over plaintiffs' tips, voiding the tip credit. The other "retention" identified by plaintiffs is the Club's alleged policy of temporarily retaining the gratuity on an unsigned credit card bill. Plaintiffs disregard the fact that, in such cases, the customer did not authorize the payment of any gratuity whatsoever and fail to explain how the alleged practice violates the law. In fact, the U.S. Department of Labor's Field Operation Handbook provides that employers are not required to pay gratuities on uncollected credit card transactions. Field Operation Handbook § 30d05(c).

(ii)    *Individual Analyses Render Conditional Certification Inappropriate*

Even if the policies alleged by plaintiffs were improper, plaintiffs' own deposition testimony reveals that all tipped employees were not victimized by any common policy or practice resulting in tip retention. Although some plaintiffs claim that the Club retained their tips when a customer left without paying or when credit card procedures were not followed, others do not. (*Compare* Gillette Dep. at 51-57; Pownall Dep. at 44 *with* Williams Dep. at 66-67.) Even Gillette, who alleges her tips were retained on three instances, identified no common practice. She claims that once she was required to pay the entire bill (Gillette Dep. 53), but at another time was required only to pay the amount of her tip. (*Id.* at 56.) Pownall also claims that, on one occasion, his tips were retained to cover a customer's entire bill when proper credit card

procedures had not been followed.  (Pownall Dep. at 44.)  Pownall's claim contradicts plaintiffs'

declarations, which assert that failure to follow proper credit card procedures resulted only in a

temporary retention of tips.

Plaintiffs' testimony also varies markedly with respect to their claim that the Club forced

them to pay for breakages, spills and the like.  For instance, Raz claims that a manager required

her to pay for a broken bottle, but that she was not required to pay when she spilled a drink or

made a wrong order.  (Raz Dep. at 67, 70.)  Conversely, Williams claims she was required to pay

for wrong orders, but not breakages or spills.  (Williams Dep. at 62-63.)  Gillette, Pownall, and

Sturman never paid for either breakages or spills.  Simply put, not two of the plaintiffs testified

to personal knowledge of any common policy or practice.

To the extent that any alleged tip retention occurred, plaintiffs' testimony also

demonstrates only that it occurred on a sporadic basis.  At best, plaintiffs' testimony suggests

implementation of different practices by different managers at different times.  Accordingly, the

Court would need to determine the appropriate wage separately for each plaintiff on a week by

week basis,[15] depending on when the alleged tip retention occurred, further minimizing any

potential benefit to adjudicating the *Williams* plaintiffs' claims collectively.

Congress did not design or intend the § 216(b) collective action mechanism to apply to

litigation requiring such a large number of factual determinations, as such realities eliminate any

judicial efficiency that a collective action might provide.  *See, e.g., West*, 2006 WL 1892527, at

*9 (finding collective action inappropriate because of individualized nature of alleged

violations); *Morisky v. Public Serv. E&G Co.*, 111 F. Supp. 2d 493, 498-99 (D.N.J. 2000)

(litigating as a collective action "would be anything but efficient" where evaluation of claims

---

[15] *See* DOL Field Operations Handbook § 30d00 (indicating that whether an employer can take a tip credit applies on an individual employee basis and can vary from week to week).

must be made on employee-by-employee basis). Because the *Williams* plaintiffs have failed to demonstrate that they all sustained injury from any one unlawful practice, and because the circumstances of their claims vary too widely to conclude that they are similarly situated to each other or to any other tipped employees, their motion for conditional certification and authorization of class notice should be denied.

### 2. Plaintiffs Have Not Identified A Common Policy Or Practice That Resulted In A Violation Of The FLSA's Overtime Provision

Plaintiffs assert in their motion that the Club violated the FLSA by failing to pay them the appropriate amount of overtime. Plaintiffs' conclusory pronouncement that they and other hourly employees were treated in a similar manner is insufficient to establish that the broad group of employees plaintiffs seek to represent are similarly situated. *See, e.g., Morales v. Plantworks, Inc.*, 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006). To the extent that any errors in payment of overtime occurred, plaintiffs have not identified a specific policy or practice commonly followed by the Club, which resulted in such errors. In fact, throughout their motion, plaintiffs allege several different ways in which they were denied overtime. First, plaintiffs assert that the Club paid no wages at all to its tipped employees. (Pls.' Br. at 7.) Then, plaintiffs contradictorily claim that the Club routinely paid straight time to employees, but did not pay the additional overtime rate for overtime hours worked. (Pls.' Br. at 11.) Plaintiffs then deviate again by claiming that other employees received no compensation at all for overtime hours worked. (Pls.' Br. at 12.) These variations in the Club's alleged practices are fatal to plaintiffs' motion.

### a. *The Williams Plaintiffs Are Not Similarly Situated To Other Employees*

No factual nexus exists between the claims of the *Williams* plaintiffs and those of the *Pickering* plaintiffs. The gravamen of the *Williams* plaintiffs' claims is that the Club failed to

pay them any wages whatsoever.  The *Pickering* plaintiffs acknowledge that the Club paid them wages, but claim that the Club did not properly compensate them for overtime hours worked. Because of the unique manner in which they were compensated, tipped employees are not similarly situated to any other employees with respect to wage claims.  Moreover, for the reasons discussed in section IV.B.2 above, the *Williams* plaintiffs are not similarly situated to each other or other tipped employees with respect to their hypothetical overtime claims.

             b.    *The Pickering Plaintiffs Are Not Similarly Situated To Other Employees*

        After removing the tipped employees from the equation, the Court must determine whether the *Pickering* plaintiffs are similarly situated to any other non-exempt employees.  They are not.  Even under the most permissive line of authority, averments made in support of a motion for conditional certification must be based on personal knowledge, and unsupported assertions of widespread violations are not sufficient to meet plaintiffs' burden.  *West*, 2006 WL 1892527, at *6.  When the unsupported assertions are stricken from the declarations submitted by the *Pickering* plaintiffs, all that remains are claims by two individual employees that they did not receive proper overtime pay.

        Plaintiffs point to no policy that would indicate their alleged experiences were similar to that of any other employee, and their limited experiences cannot establish the existence of widespread violations resulting from a common policy or plan.  *See, e.g.*, *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (evidence demonstrating an employer's payment practices with respect to two employees out of fifty did not amount to even a modest factual showing of a common policy or plan).  Neither plaintiff's declaration or exhibits refer to any specific employee other than herself.  Though the first stage of class certification requires only a modest factual showing, it must be sufficient to demonstrate that plaintiffs and potential class members were victims of a common policy or practice that violated the law.  Plaintiffs'

conclusory allegations that other undefined employees[16] were treated in a similar manner are insufficient to meet even this minimal burden. *Morales*, 2006 WL 278154, at *2-3.

Simply, the *Pickering* plaintiffs have failed to submit facts connecting their alleged experiences to that of any other employee, or even to each other.[17] Despite this failure, they seek a list of the Club's current and former non-exempt employees, a pond in which they may fish. Without first providing actual evidence of a factual nexus between themselves and those they wish to contact, the Club should not be "unduly burdened by a frivolous fishing expedition conducted by plaintiff." *D'Anna v. M/A-COM, Inc.*, 903 F.Supp. 889, 894 (D. Md. 1995). Accordingly, the Court should deny the *Pickering* plaintiffs' motion for conditional certification and authorization of class notice.

## V. PLAINTIFFS' PROPOSED NOTICE SHOULD BE REJECTED

If the Court determines that judicial notice is appropriate for any group, the Court should exercise its broad discretionary authority to manage that communication and ensure that it is not used to stir up litigation unnecessarily. Defendants have several objections to the notice proposed by plaintiffs and request the opportunity to be heard with respect to the content of such

---

[16] The *Pickering* plaintiffs, both former receptionists, fail to state clearly and specifically to whom it is they contend they are similarly situated. Their declarations refer generally to "non-management employees." This vague category of employees is plainly overbroad. For instance, as already discussed, the *Pickering* plaintiffs are not similarly situated to tipped employees. Nor would they be similarly situated, with respect to wage claims, to administrative or other employees paid on a salary basis. In their motion, the Pickering plaintiffs also refer to themselves broadly as office workers, although they acknowledge in their declarations that they were receptionists. Plaintiffs' failure to state clearly and specifically to whom they contend they are similarly situated may be fatal, in and of itself, to collective action certification. *Flores*, 2006 WL 695675, at *3 (finding it impossible to conclude whether certification was warranted where plaintiffs failed to specify to whom they contended they were similarly situated).

[17] Pickering, unlike Branch, claims that some of her overtime hours went unpaid. (Pls.' Br. at 11-12.) They do not both allege to have been victimized by one particular policy or practice. *See also* Declarations of other receptionists Timavia Cole, Yolanda Dent, Starry Parks, and Coralito Sosa, indicating that the Club has denied them no minimum, overtime or other wages.

notice, once the Court (as opposed to plaintiffs) have defined the putative classes, if any.

Defendants are compelled at this point, however, to address the most glaring defect in the proposed notice. In their notice, plaintiffs identify Shawn Carter and Juan Perez as employers of individuals employed at the Club, claiming that these gentlemen "wield significant power" over the Club's operations. Notably, plaintiffs cite only to their own unverified complaints for this statement, while each plaintiff who has undergone deposition has admitted that they have no support for their claims against either individual. (Gillette Dep. at 29, 107-09; Pownall Dep. at 59-60, 91-92; Raz Dep. at 24-25, 73-74; Sturman Dep. at 145-46, 156-57; Williams Dep. at 34-35, 71-72.) If plaintiffs refuse to voluntarily withdraw their claims against these individuals, defendants request leave to renew their motion to dismiss, and have that motion decided, before the Court makes a determination on plaintiffs' motion for conditional certification.[18]

## VI.   CONCLUSION

Plaintiffs' effort to justify a wide-ranging notice to all current and former hourly employees of the Club falls far short of the standard of proof required for conditional certification. Accordingly, the Court should deny plaintiffs' motion in its entirety.

Dated: New York, New York
      February 29, 2008

LITTLER MENDELSON, P.C.

By:   s/ Sara D. Sheinkin
     Andrew P. Marks (AM-0361)
     Sara D. Sheinkin (SS-9719)
     885 Third Avenue
     New York, New York 10022
     Tel: (212) 583-9600

     Attorneys for Defendants

---

[18] Defendants also seek to limit any putative class to employees hired prior to October 1, 2007. At that time, the Club switched its payroll provider from Paychex to ADP. None of the plaintiffs has worked at the Club since ADP became the payroll provider and there has been no showing that such employees are similarly situated to plaintiffs, or were victims of any unlawful policy or practice.