El TRIBUNAL DISTRITO DE LOS EEUU,
DISTRITO DEL SUR DE NUEVA YORK
-------------------------------------------------x
CELESTE WILLIAMS, LAUREN CRUZ,
EMANUEL O'NEALE, BRANDON
STURMAN, LATRESHA HALL,
LAKEISHA MITCHELL, CHRISTINE
BORBELY, JULIE GARIBALDI y JANINE
APONTE, de parte de si mismos y otros de
situaciones similares,

INDEX NO: 07cv3978-LAP

                Demandantes,

   v.

TWENTY ONES INCORPORATED d/b/a
EL 40/40 CLUB, SHAWN CARTER p/k/a
JAY-Z, JUAN PEREZ y DESIREE
GONZALES,

                Acusados.
-------------------------------------------------x

## DECLARACIÓN DE MIGUEL LINARES

Yo, Miguel Linares, bajo castigo de perjurio, afirmo como sigue:

1.    Soy un residente de Nueva York y decidió participar como demandante en el asunto mencionado en el 1 de Junio, 2007.

2.    Presento esta declaración basado en mi conocimiento personal a menos que lo indique a lo contrario.

3.    Trabajé como cocinero en el 40/40 Club sports bar ubicado en el número 6 de la calle West 25th desde apróximadamente Mayo de 2004 hasta February de 2007.

4.    Mis recibos de pago adjuntos (la Prueba A) muestran que el 40/40 Club no me pagó un salario multipicado por una y media de mi tarifa normal por hora para las

horas qu trabajé más de una semana de trabajo de 40 horas. (El tiempo que trabajé se ve reflejado en la sección de "rate" (tasa) de mis recibos de pago, y mi tasa está en la sección de "hours" (horas).

5. A eso del día 1 de Julio en 2007, Desiree Gonzales me llamó de 40/40 Club y me pidió comparecer en el 40/40 club para discutir mi empleo allí.

6. Cuando llegó, Ms. Gonzales me acusó de mentir al juez en mi audencia de desempleo, con respeto a mi terminación del 40/40 Club.

7. Ms. Gonzales dijo que había contratado a un detective que descubrió que yo tuviera un historial de antecedents criminales. Ms. Gonzales implicó que lo usaría contra mi y que me sometería a más responsabilidad criminal si no cumplara con su solicitud.

8. No domino el inglés hablado y no leo ni escribo inglés.

9. Ms. Gonzales dijo que si yo firmara el documento adjunto podría reclamar prestaciónes por desempleo y evitar consecuencias adversas. Ms. Gonzales nunca me informó que si yo firmara el documento perdería el juicio y no ganaría el dinero que merecía.

10. A cambio de tres mil dólares, firmé el documento atado, aquí en la Prueba B, y creí, debido a la representación de Ms. Gonzales, que el documento tuviera el único propósito de darme mis prestaciónes por desempleo y evitar consecuencias aversas.

11. Durante toda la conversación, ella nunca me mostró mis documentos de tiempo ni los de nómina del 40/40 Club, ni describió los documentos a mi. El 40/40 Club no sugirió que consultara con un abogado antes de firmar el documento.

12. Firmé el documento adjunto por la intimidación de Ms. Gonzales y con la creencia que recibiría mis prestaciones por desempleo. No comprendí que renunciaría mis derechos en el asunto mencionado.

Afirmo, bajo castigo de perjurio, que la información arriba y precedente es verdad y correcta.

Fechada: New York, New York
El 14 de marzo, 2008

*Miguel Linares*
Miguel Linares

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**CELESTE WILLIAMS, LAUREN CRUZ,**
**EMANUEL O'NEALE, BRANDON**
**STURMAN, LATRESHA HALL,**
**LAKEISHA MITCHELL, CHRISTINE**
**BORBELY, JULIE GARIBALDI and**
**JANINE APONTE, on behalf of themselves**
**and others similarly situated,**

INDEX NO: 07cv3978-LAP

        **Plaintiffs,**

      **v.**

**TWENTY ONES INCORPORATED d/b/a**
**THE 40/40 CLUB, SHAWN CARTER p/k/a**
**JAY-Z, JUAN PEREZ and DESIREE**
**GONZALES,**

        **Defendants.**
------------------------------------------------------------x

## DECLARATION OF MIGUEL LINARES

I, Miguel Linares, under penalty of perjury, affirm as follows:

1. I am a New York resident and opted in as a plaintiff in the above-captioned matter on June 1, 2007.

2. I submit this declaration based on personal knowledge unless indicated otherwise.

3. I was employed as a Cook at The 40/40 Club sports bar located at 6 West 25th Street from approximately May 2004 through February 2007.

4. My attached pay stubs (Exhibit A) show that I was not paid one and a half times my regular hourly rate for hours worked in excess of forty per workweek. (The amount of hours I worked is reflected in the "rate" section of my pay stubs, and my rate is in the "hours" section.)

5. On or about 7/1/07, I was telephoned by Desiree Gonzales from the 40/40 Club and asked to appear at the 40/40 club to discuss my employment there.

6. When I arrived, I was accused by Ms. Gonzales of lying to the judge in my unemployment hearing regarding my termination from the 40/40 Club.

7. Ms. Gonzales stated that she had hired a detective who discovered that I had a criminal record. Ms. Gonzales implied she would use this against me and that I would be subject to further criminal liability if I did not comply with her present request.

8. I do not speak English fluently and do not read or write English.

9. Ms. Gonzales stated that signing the attached document would allow me to be able to collect unemployment benefits and avoid any adverse consequences. Ms. Gonzales never informed me that signing this document would entail my dropping the lawsuit and not collecting the money rightfully owed to me.

10. In exchange for $3,000, I signed the attached document, which is attached as Exhibit B, believing, based on Ms. Gonzales' representation, that the sole purposes of the document were to allow me to be entitled to unemployment benefits and to avoid adverse consequences.

11. Throughout these conversations, I was never shown my time records and payroll records by the 40/40 Club, nor were these records ever explained to me. The 40/40 Club did not suggest that I consult an attorney before signing this document.

12. I signed the attached agreement because of Ms. Gonzales' intimidation and under the belief that I would be receiving my unemployment benefits. I did not understand that I would be waiving my rights in the above-captioned matter.

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

Dated: New York, New York
March 14, 2008

/s/_____
Miguel Linares

# EXHIBIT A

| YOUR BANKING | | EARNINGS | HOURS | RATE | AMOUNT | YTD AMOUNT |
|---|---|---|---|---|---|---|
| | | REGULAR | 10.00 | 115.000 | 1150.00 | |

*handwritten: 212-989-0040, May 29, 2004, 5/25/2004, 2/18/2007*

| | | TOTAL EARNINGS | | | 1150.00 | 5060.00 |

| EMPLOYER INFORMATION | FILING STATUS | TAX TYPE | AMOUNT | YTD AMOUNT |
|---|---|---|---|---|
| 40/40 CLUB | | SOC SEC | 71.30 | 313.72 |
| 6 WEST 25TH STREET | | MEDICARE | 16.68 | 73.37 |
| NEW YORK, NY 10010 | S 01 | FEDERAL | 123.23 | 561.92 |
| | S 01 | NY | 42.49 | 201.48 |
| | | DBL | 1.20 | 4.80 |
| PAY PERIOD 02/05/07 TO 02/18/07 | S 01 | NYC | 26.74 | 124.65 |
| CHECK DATE 02/22/07 CHECK # 5767 | | | | |

| | TOTAL WITHHOLDINGS | 281.64 | 1279.94 |
|---|---|---|---|

| PERSONAL INFORMATION | ADJUSTMENTS | AMOUNT | YTD AMOUNT |
|---|---|---|---|
| MIGUEL A LINARES | ADV/LOAN | 200.00- | 200.00- |
| 1925 UNIVERSITY, #2D | | | |
| BRONX NY 10453 | | | |
| | | | |
| SS# XXX-XX-2050 EMPL# 000290 DEPT# 000500 | | | |

| | TOTAL ADJUSTMENTS | 200.00- | |
|---|---|---|---|

Payrolls by Paychex, Inc.

0020 **Y156** 0020  000500            NET PAY          668.36      3580.06

FOLD AND REMOVE                                                         FOLD AND REMOVE

**YOUR BANKING**

| EARNINGS | HOURS | RATE | AMOUNT | YTD AMOUNT |
|---|---|---|---|---|
| REGULAR | 12.00 | 115.000 | 1380.00 | |
| TOTAL EARNINGS | | | 1380.00 | 1380.00 |

**EMPLOYER INFORMATION**

40/40 CLUB
6 WEST 25TH STREET
NEW YORK, NY  10010

PAY PERIOD 12/25/06 TO 01/07/07
CHECK DATE 01/11/07    CHECK #   5567

| FILING STATUS | TAX TYPE | AMOUNT | YTD AMOUNT |
|---|---|---|---|
| | SOC SEC | 85.56 | 85.56 |
| | MEDICARE | 20.01 | 20.01 |
| S 01 | FEDERAL | 157.73 | 157.73 |
| S 01 | NY | 58.25 | 58.25 |
| | DBL | 1.20 | 1.20 |
| S 01 | NYC | 35.63 | 35.63 |
| TOTAL WITHHOLDINGS | | 358.38 | 358.38 |

**PERSONAL INFORMATION**

MIGUEL A LINARES
1925 UNIVERSITY, #2D
BRONX NY  10453

SS#   XXX-XX-2050 EMPL# 000290 DEPT# 000500

| ADJUSTMENTS | AMOUNT | YTD AMOUNT |
|---|---|---|

Payrolls by Paychex, Inc.
    0020 **Y156** 0022    000500                          NET PAY                     1021.62           1021.62

FOLD AND REMOVE

**YOUR BANKING**

| EARNINGS | HOURS | RATE | AMOUNT | YTD AMOUNT |
|---|---|---|---|---|
| REGULAR | 11.00 | 115.000 | 1265.00 | |
| TOTAL EARNINGS | | | 1265.00 | 3910.00 |

**EMPLOYER INFORMATION**

40/40 CLUB
6 WEST 25TH STREET
NEW YORK, NY 10010

PAY PERIOD 01/22/07 TO 02/04/07
CHECK DATE 02/08/07   CHECK # 5702

| FILING STATUS | TAX TYPE | AMOUNT | YTD AMOUNT |
|---|---|---|---|
| | SOC SEC | 78.43 | 242.42 |
| | MEDICARE | 18.34 | 56.69 |
| S 01 | FEDERAL | 140.48 | 438.69 |
| S 01 | NY | 50.37 | 158.99 |
| | DBL | 1.20 | 3.60 |
| S 01 | NYC | 31.14 | 97.91 |
| TOTAL WITHHOLDINGS | | 319.96 | 998.30 |

**PERSONAL INFORMATION**

MIGUEL A LINARES
1925 UNIVERSITY, #2D
BRONX NY 10453

SS# XXX-XX-2050 EMPL# 000290 DEPT# 000500

| ADJUSTMENTS | AMOUNT | YTD AMOUNT |
|---|---|---|

Payrolls by Paychex, Inc.

0020 **Y156** 0015   000500

| NET PAY | 945.04 | 2911.70 |
|---|---|---|

# EXHIBIT B

# AGREEMENT AND RELEASE OF ALL CLAIMS

This Agreement and Release of All Claims ("Agreement") is made and entered into by and between Miguel Linares ("Employee") and Twenty Ones, Inc. d/b/a The 40/40 Club ("Company"), the parties to this Agreement.

WHEREAS, Employee was employed with Company from May 24, 2004 until February 18, 2007; and

WHEREAS, during his employment with Company, Employee voluntarily accepted a fixed weekly salary for all hours worked during the work week, which work week from time to time was greater than forty hours per week and from time to time was less than forty hours per week; and

WHEREAS, at all times the amount paid by Company to Employee far exceeded the applicable minimum wage for all hours worked; and

WHEREAS, Employee claims that he was entitled to receive from Company, overtime and the rate of time and one half his regular hourly rate for hour worked in excess of forty hours per week, but that said overtime was not paid by Company; and

WHEREAS, Employee has consented to become a party plaintiff in a collective action currently pending in the United States District Court captioned *Williams, et al. v. Twenty Ones, Inc., et al.*, 07 cv 103978 (the "Action"), seeking minimum wages and overtime on behalf of employees and former employees of the Company; and

WHEREAS, Employee desires to withdraw as a plaintiff from the Action and to voluntarily resolve all of his claims and differences with Company;

NOW, THEREFORE, IT IS HEREBY AGREED as follows:

1. Company shall pay Employee the total sum of _____ dollars (_____). Employee understands and agrees that Company will deduct from this sum all income tax, payroll tax and other required withholdings. Employee has been given the opportunity to review his time and payroll records and acknowledges that the sum paid represents the total amount of wages and overtime to which he may be entitled as a result of his employment with Company. Company shall pay Employee an additional amount of two hundred fifty dollars ($250) which shall constitute additional consideration for this Agreement.

2. Employee hereby releases irrevocably and unconditionally Company along with each of its past, present and future parents, subsidiaries, affiliates and related entities and its and their agents, officers, directors, owners, shareholders, investors, employees, representatives, successors and assigns and anyone acting in concert with any of them, including but not limited to Desiree Gonzales, Juan Perez and Shawn Carter (hereinafter referred to collectively as "Releasees") from any and all claims, demands, actions or liabilities of whatever kind, known or

1

unknown, suspected or unsuspected, foreseen or unforeseen, in law or in equity, that he now has or ever had against Releasees, including, but not limited to, those arising out of his employment with or termination from the Company, his compensation during his employment with the Company, and any act by any of the Releasees that occurred or should have occurred prior to Employee's execution of this Agreement. Employee agrees that this release includes, but is not limited to, any and all individual and/or collective claims under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Employee Retirement Income and Security Act, the Worker Adjustment and Retraining Notification Act, the New York State Human Rights Law, the New York City Human Rights Law, New York Labor Law and any other federal, state or local statute, law, regulation, rule, ordinance or order. Employee further agrees that this release includes claims based on any contract and/or tort theories, whether based on common law or otherwise, and specifically includes all claims for unpaid overtime and other wages or benefits and any related penalties, liquidated damages and attorneys' fees under federal, state and local law.

3. Employee promises not to sue Releasees for any claim released by this Agreement. Employee agrees to withdraw as a plaintiff from the Action, with prejudice and without attorneys' fees or costs, and represents that he has filed or will file with counsel in the Action notice of such withdrawal. Employee further represents that he has not filed any charge, complaint, grievance, action or claim (collectively referred to as "claim") against the Company, with any state, federal or local agency or court or other forum or entity. If, however, Employee has asserted or hereafter asserts any claim against the Company concerning any matter arising out of his employment or the termination thereof, or such claim is asserted by others on his behalf, then this Agreement shall be an absolute bar to, and shall absolutely defeat, any such action as to Employee's claim for any compensation, damages or other relief. If Employee is awarded any damages in such action he shall return the full amount of such damages to Releasees and will compensate Releasees for any attorneys fees incurred in connection with the defense of any claim released by this Agreement..

4. Employee acknowledges that his termination from employment with Company was caused by his unauthorized removal of Company property. Company releases irrevocably and unconditionally Employee from any and all claims, demands, actions or liabilities of whatever kind, known or unknown, suspected or unsuspected arising out of such wrongful acts by Employee.

5. This Agreement and Company's compliance with it are not admissions or evidence that the Company has in any way violated any of the rights of Employee, or the rights of any other person, or violated any order, law, statute, duty or contract of any kind.

6. The parties to this Agreement represent and guarantee that in executing this Agreement they have not relied and do not rely upon any promise, representation or statement made by any party or by any party's agent, attorney, or representative concerning the subject matter, basis, or effect of this Agreement or otherwise.

7. Employee represents and agrees that:

   (a) He has carefully read and fully understands all of the provisions of this Agreement;

   (b) He is freely and voluntarily entering into this Agreement and knowingly discharging all of the Releasees in accordance with the terms contained in the general release above in exchange for the consideration described herein, which is in addition to something of value to which he was/is already entitled;

   (c) Before executing this Agreement, he was offered at least twenty-one (21) days to consider his rights and obligations under this Agreement;

   (d) The period of time he had to consider his/her rights and obligations under this Agreement was reasonable;

   (e) He was advised and hereby is advised in writing to consider the terms of this Agreement and consult with an attorney of his choice prior to executing this Agreement;

   (f) The general release contained in Paragraph 2 of this Agreement constitutes, among other things, a waiver of all rights and claims he may have under the Age Discrimination in Employment Act of 1967, as amended (29 U.S.C. § 621, *et seq.*);

   (g) The general release contained in Paragraph 2 of this Agreement does not waive any rights or claims that he may having arising after this Agreement is executed; and

   (h) For a period of seven (7) days following the date on which he executed this Agreement, he may revoke this Agreement. The Agreement shall not become effective or enforceable until this seven (7) day revocation period has expired without Employee having exercised his right to revoke. The next day following the date on which the revocation period expires shall be the "effective date" of this Agreement. Any revocation by Employee must be made in a letter signed by him and received by the following representative of the Company at the following address by no later than the eighth (8th) day following Employee's execution of this Agreement: Desiree Perez, General Manager, The 40/40 Club, 6 West 25th Street, New York, New York, 10010.

8. This Agreement sets forth the entire Agreement between the parties and fully supersedes and renders null and void any and all prior agreements, offers, proposals or understandings, written or oral, between the parties to this Agreement pertaining to the subject

3

matters referred to in this Agreement. Should any provision of this Agreement be declared or determined by any Court of competent jurisdiction to be wholly or partially illegal, invalid, or unenforceable, the legality, validity, and enforceability of the remaining parts, terms, or provisions shall not be effected thereby, and said illegal, unenforceable, or invalid part, term or provision shall be deemed not to be a part of this Agreement.

9. This Agreement shall be interpreted in accordance with the laws of the State of New York and the federal laws of the United States of America, and with the plain meaning of its terms and shall not be interpreted for or against any of the parties hereto regardless of who prepared any provision to this Agreement.

This Agreement is accepted by the Employee on the _____ day of _____, 2007, as evidenced by Employee's signature

_____
Miguel Linares

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF New York   )

I, _____, a Notary Public, do hereby certify that Miguel Linares, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as her free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal this ___ day of _____, 2007.

ADAM GREEBLER
Notary Public State of New York
No. 01GR5001894
Qualified In Queens County
Commission Expires Sept 21, 2010

_____
Notary Public

My Commission Expires: _____

This Agreement is accepted by Company on the _____ day of _____, 2007, as evidenced by a duly authorized signature on behalf of Company:

COMPANY

By: _____
Name:
Title or Authority:

4